The STATE of Ohio, Appellee,

v.

NAPIER, Appellant.

[Cite as *State v. Napier* (1995), 105 Ohio App.3d 713.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940116.

Decided Aug. 16, 1995.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *L. Susan Laker,* Assistant Prosecuting Attorney, for appellee.

*H. Fred Hoefle,* for appellant.

MARIANNA BROWN BETTMAN, Judge.

The defendant-appellant, Ella Napier, appeals from the judgment of the court below convicting her, following a jury trial, of aggravated assault and a firearm specification. In eight assignments of error, Napier alleges (1) that the trial court erred in concluding that she failed to prove the affirmative defense of self-defense; (2) that the trial court's instruction to the jury with respect to self-defense was erroneous; (3) that her conviction was not supported by sufficient evidence; (4) that her conviction was contrary to the manifest weight of the evidence adduced at trial; (5) that the trial court erred when it denied her motion

for judgment of acquittal; (6) that she was denied a fair trial due to prosecutorial misconduct; (7) that her conviction on the firearm specification was improper because the verdict form submitted to the jury was defective; and (8) that she was denied the effective assistance of counsel at trial. Finding merit in a portion of the second assignment of error, we reverse the judgment of the trial court.

There is no dispute in this case that Napier shot and seriously wounded Michael Biedenbach. While Napier has assigned numerous errors on appeal, the essence of her defense at trial and before this court remains the same: that she was entitled to defend herself against the life-threatening behavior directed toward her by Biedenbach.

To appreciate the dimensions of the instant controversy, it is helpful to examine the events which occurred in the months that preceded that tragic confrontation. The record reveals that Napier lived in a house adjacent to the residence owned by Biedenbach's parents. The two properties are separated by a strip of land approximately four feet wide that served as the focal point of the dispute which arose between the two families in 1990. At that time, both the Napiers and the Biedenbachs claimed that they owned the land. Surveys were taken, a civil suit was filed and the police, on several occasions, were summoned to the residences to calm the explosive situation.

It is undisputed that the victim, Biedenbach, did not reside at his parents' house. He felt compelled, however, to ensure that his parents' property rights were respected by the Napiers. Biedenbach was irritated by the fact that the Napiers placed a "No Trespassing" sign on the property in dispute, and when visiting his parents, he would pull the sign from the ground and throw it into the Napiers' yard. Each time the Napiers replaced the sign, Biedenbach would remove it from the disputed strip of land. Arguments over control of the land became more heated and the situation became increasingly tense.

On March 3, 1993, Biedenbach arrived at his parents' house. Before getting out of his truck, he activated a small tape recorder which he had placed in his shirt pocket, because, as he indicated at trial, he anticipated a confrontation with the Napiers. He then walked towards the disputed strip of land.

Napier testified at trial that she was sitting on a couch in her living room when she saw Biedenbach park his truck across the street from his parents' house. She stated that he got out of the truck and walked, at a quick pace, toward her property and the sign. At that point, Napier asserted, she picked up a pistol kept near her couch, stood and walked to her door, and moved out onto the steps of her porch.

Once outside, Napier claimed she instructed Biedenbach to get off her property and to leave the sign alone. What happened next is disputed in part. Bieden-

bach pulled the sign from the ground and threw it towards Napier, striking her on the arm. Napier then raised the gun and fired it three times, striking Biedenbach once, just in front of the ear. Napier claimed that at the time she fired the pistol Biedenbach was advancing towards her. Biedenbach, on the other hand, testified that at no time did he ever step onto Napier's property, and that, in fact, at the time he was shot, he was running away from the scene.

Napier was arrested and charged in an indictment with two counts of felonious assault, each with a firearm specification. After a trial before a jury, Napier was convicted on one of the counts of the lesser offense of aggravated assault and a single firearm specification. She was sentenced as appears of record.

Napier's third, fourth and fifth assignments of error raise related issues and will be addressed together. In these assignments, Napier asserts that the record, when reviewed in its entirety, reveals that her conviction for aggravated assault was contrary to the weight and sufficiency of the evidence adduced at trial. The assignments of error are not well taken.

■ Napier was convicted of aggravated assault, in violation of R.C. 2903.12(A)(2). This provision provides that:

"No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

" * * *

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."

The offense of aggravated assault contains elements which are identical to the elements defining felonious assault, except for the additional mitigating element of serious provocation. *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294. With respect to what constitutes serious provocation, the court in *Deem* held that it "must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Id.* at paragraph five of the syllabus.

■ A verdict cannot be said as a matter of law to be manifestly against the weight or sufficiency of the evidence where substantial evidence is offered by the state in support of all of the elements of the charged offense, and if such evidence

was of sufficient probative value to sustain a conviction, the reviewing court will not reverse on the sufficiency or weight of the evidence. *State v. Barnes* (1986), 25 Ohio St.3d 203, 25 OBR 266, 495 N.E.2d 922.

In the instant case, the record reveals that Biedenbach and the Napiers were engaged in a bitter dispute over ownership of the strip of land. There was evidence adduced at trial that actions by each of the parties fueled a controversy that neither the police nor the courts could successfully resolve. It is beyond dispute that Napier knowingly caused physical harm to Biedenbach when she raised the weapon and shot him in the side of the head. Given the emotionally charged atmosphere that preceded the assault and the fact that Biedenbach did strike Napier on the arm with the sign, the jury could have reasonably concluded that the mitigating element of serious provocation was established in this case which caused Napier to respond with deadly force.

We are convinced, after reviewing the record in its entirety, that the state offered substantial evidence in support of all of the elements of aggravated assault, and that such evidence was of sufficient probative value to sustain the conviction. Accordingly, the third, fourth and fifth assignments of error are overruled.

In her second assignment of error, Napier alleges that the trial court incorrectly instructed the jury with respect to her claim of self-defense. This assignment is well taken in part.

The majority finds a pervasive problem with the jury instructions on self-defense in this case which strongly affects the analysis of the second assignment of error.

In dissent Judge Gorman notes that the instructions in this case "were simply a recitation of the defense of self-defense from Ohio Jury Instructions upon which every trial judge relies." In *State v. Burchfield* (1993), 66 Ohio St.3d 261, 611 N.E.2d 819, Justice Pfeiffer, writing for a unanimous court, in taking issue with a particular instruction from OJI, noted that "while OJI is widely used in this state its language should not be blindly applied in all cases." Accord *State v. Martens* (1993), 90 Ohio App.3d 338, 343, 629 N.E.2d 462, 465 ("The instructions found in [OJI] are not mandatory. * * * Requiring a trial court to rigidly follow these instructions would remove judicial * * * flexibility necessary to manage the various situations that arise during a jury trial."); *State v. Mitchell* (May 2, 1989), Franklin App. No. 88AP–695, unreported, 1989 WL 47083 ("Ohio Jury Instructions are not officially sanctioned instructions. Rather, [they] are the product of a committee of the Ohio Judicial Conference which suggests model instructions, but which have no force or effect as a rule of law. They are merely the suggestions of one or more trial or appellate judges as to what those judges feel

is an appropriate instruction. They are promulgated for the guidance of trial judges as a guide, not as a 'bible.' ").

In this case too many parts of the Ohio Jury Instructions on self-defense were given indiscriminately, without reference to the particular facts of the case. The result is both confusing and self-contradictory in significant parts. This is not wholly the fault of the trial judge. Unlike the vast majority of instructions in OJI, which are excellent, several of the individual self-defense instructions in OJI are confusing and contradictory, and in one instance, as discussed below, erroneous. The resulting charge, taken as a whole, failed to provide the jury with the tools it needed to evaluate Napier's claim of self-defense on the facts which were before it. *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772.

The jury instruction in the instant case provided, in part, that to establish self-defense the following elements must be shown:

"1. The defendant was not at fault in creating the situation giving rise to the noisey [*sic*] quarrel;

"2. The defendant had an honest belief that she was in imminent danger of death or great bodily harm, and that her only means of escape from such danger was in the use of such force as she used;

"3. The defendant must not have violated any duty to avoid the danger."

Later in its charge, the trial court instructed the jury that:

"A defendant is not in a position to claim self-defense if he or she sought trouble and armed with a dangerous weapon; he or she provoked the fight, didn't attempt to avoid it, or leave the scene of the trouble."

Building upon the objection she raised at trial, Napier now argues, in essence, that the instruction was incorrect because it inappropriately conveyed to the jury that she had a duty to retreat or to avoid the danger, despite the fact that she was on the porch of her own home at the time the confrontation took place. We agree and believe this error was properly preserved for appeal.

Generally, a person must avoid using force to injure another person. Self-defense is an exception to that rule. It is an affirmative defense, which the defendant must prove by a preponderance of the evidence. R.C. 2901.05; *State v. Martin* (1986), 21 Ohio St.3d 91, 21 OBR 386, 488 N.E.2d 166.

A person is entitled to use self-defense when she is not at fault in creating the situation giving rise to the dispute. Next, she must have had an honest belief that she was in imminent danger of death or great bodily harm and that her only means of escape from such danger was in the use of force. This test is subjective, and the jury must consider the entire situation and determine whether the person's actions were reasonable under the circumstances. *State v.*

*Smith* (1983), 10 Ohio App.3d 99, 10 OBR 122, 460 N.E.2d 693. Finally, generally, the person must not have violated any duty to retreat or avoid the danger. *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755, paragraph two of the syllabus. However, there is an exception to this third element of self-defense when a person is in her own home. *State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279; *State v. Peacock* (1883), 40 Ohio St. 333.

■ Even when a person is in her own home she does not automatically have the right to use deadly force in self-defense. As stated in one of the clearest of the Ohio Jury Instructions on self-defense, the law does not measure nicely the degree of force which may be used to repel an assailant. A person, even in her own home, may only use that degree of force which is reasonably necessary under the circumstances. 4 Ohio Jury Instructions (1994) 76, Section 411.33(3).

■ The problem with the jury instructions in this case is that in one part of the instructions the jury was clearly given the impression that Napier did have a duty to avoid the danger, which she did not. Since the degree of force appropriate under the circumstances depends in a significant way on whether a person had a duty to retreat or avoid the danger, the instruction as given was misleading and prejudicial to Napier. Our holding on this assignment of error should not be read to mean that Napier was justified in using deadly force because she had no duty to retreat or avoid the danger. It is for the jury to decide whether Napier used that degree of force reasonably necessary under the circumstances; however, she is entitled to the proper instructions on "no duty to retreat" and "use of force."

Napier also takes issue with the court instructing the jury that she was required to prove that she was "not at fault in creating the situation giving rise to the noisey [*sic* ] quarrel." She argues that it was not any words which prompted her use of self-defense, but rather Biedenbach's actions in pulling the sign from the ground and throwing it at her. She advances the argument that the jury might have found that she started the verbal argument, and therefore was not entitled to defend herself.

■ In reviewing the record, we find no indication that Napier requested a special instruction or objected to this part of the instruction as required by Crim.R. 30(A). Errors which arise during the course of a trial which are not brought to the attention of the trial court by objection or otherwise are waived and may not be raised on appeal, unless such errors rise to the level of plain error. *State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279; *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332. Crim.R. 52(B) states that "[p]lain error or defects affecting substantial rights may be noticed

although they were not brought to the attention of the court." This rule "is to be applied with the utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 4 OBR 580, 580–581, 448 N.E.2d 452, 453. Further, to constitute plain error, it must appear in the record that an error occurred and that except for that error the outcome of the trial would have been different. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

In the present case, the trial court instructed the jury that use of a deadly weapon is not permitted in response to mere words, and that vile or abusive language or verbal threats, no matter how provocative, do not justify an assault or the use of a deadly weapon. This is a correct statement of the law. *Bucyrus v. Fawley* (1988), 50 Ohio App.3d 25, 552 N.E.2d 676. However, when the court also instructed the jury that in order to prevail on her self-defense claim, Napier had to prove that she was not at fault in creating the situation giving rise to the quarrel, the two instructions were contradictory. Only if the jury concluded that Napier was the aggressor in the incident in which she was struck by the sign thrown by Biedenbach, not in some verbal quarrel, would she fail on the first prong of her self-defense claim. From the "noisy quarrel" instruction, the jury could have incorrectly concluded that if Napier was the aggressor in a verbal argument, but not in the sign-throwing incident, she was not entitled to defend herself.

Although the "noisy quarrel" instruction was taken directly from 4 Ohio Jury Instructions (1994) 75, Section 411.31, we hold that it is an incorrect statement of the law. However, since the record does not conclusively demonstrate that the outcome of the trial would have clearly been otherwise absent the incorrect instruction, we cannot say that the error rose to the level of plain error.

In her first assignment of error, Napier alleges that the jury erred in concluding that she failed to prove the affirmative defense of self-defense. We decline to address the merits of this assignment since it is rendered moot by our disposition of the second assignment of error. App.R. 12(A)(1)(c). We emphasize, however, that our only holding with respect to the issue of self-defense in this case is that the jury needed to receive instructions consistent with this opinion to resolve Napier's claim fairly and without confusion, not that on this record an appropriately instructed jury was obliged to find that Napier acted in self-defense.

In her sixth assignment of error, Napier alleges that because of prosecutorial misconduct, she was not afforded a fair trial. This assignment is overruled.

The test to determine whether there was prosecutorial misconduct is whether the remarks or actions were improper and, if so, whether they prejudi-

cially affected substantial rights of the accused. *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293. "The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87. The defendant has not been denied her constitutional right to a fair trial where the prosecutor's improper comments were harmless and, absent the comments, it is clear beyond a reasonable doubt that the jury would still have found the defendant guilty. *State v. Zimmerman* (1985), 18 Ohio St.3d 43, 18 OBR 79, 479 N.E.2d 862.

During the presentation of evidence, Napier claims that the prosecutor acted improperly by informing the jury, through direct examination of Biedenbach, that Napier had attempted to enter into a plea bargain in this case; that the prosecutor, during cross-examination of a defense witness, attempted to elicit information regarding the criminal history of Napier's children; and that the prosecutor, during cross-examination of Gloria Stewart, a victim advocate working at Talbert House, inquired whether Stewart had encouraged Napier to carry a gun.

Napier's objections to each of these alleged instances of misconduct were sustained. With respect to the improper inquiries posed to Biedenbach and Stewart, the trial court immediately instructed the jury that it was not to draw any negative inferences from the questions asked by the prosecutor. Moreover, the jury was instructed at the end of the presentation of the evidence that it "must not speculate as to why the court sustained an objection to any answer or what the answer to that question may have been," and that it "must not draw inferences and speculate on the truth of any suggested answer included in the question that was not answered."

Under these circumstances, we are not convinced that the actions of the prosecutor prejudicially affected the substantial rights of Napier.

Napier also claims, however, that her right to a fair trial was impinged upon by prejudicial remarks of the prosecutor during closing argument. Specifically, Napier argues that the prosecutor acted improperly in the following respects: when he advised the jury that it could send a message to the community through its verdict in this case; when he informed the jury that it was reasonable for a son, Biedenbach, to protect the interests of an ailing father; and when he suggested to the jury that it could "compromise" and find Napier guilty of aggravated assault if it determined that she had been provoked by Biedenbach.

The record reveals that Napier did not object to any of the prosecutor's statements. Thus, Napier must demonstrate that the actions of the prosecutor amounted to plain error, *i.e.,* that an error occurred and that but for that error

the outcome of the trial would have been different.  *State v. Long, supra,* 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

We are not convinced that the remarks of the prosecutor, when considered individually or collectively, rose to the level of plain error.  The prosecutor's suggestion that the jury "send a message to the community" through its verdict was not, as Napier claims, an exhortation to succumb to public demand, but was instead more akin to a request to maintain community standards, which the Ohio Supreme Court, in *State v. Williams* (1986), 23 Ohio St.3d 16, 20, 23 OBR 13, 16–17, 490 N.E.2d 906, 911, determined was not prejudicial argument.  The remaining claims of prosecutorial misconduct—the suggestion that Biedenbach was justified in protecting his father's property and that the jury could deliver a compromise verdict—may be characterized as superfluous and ineffective argument; however, the remarks, standing alone, were not so prejudicial, given the evidence, that the outcome of the trial would have been different had they not been made.  The sixth assignment of error is, therefore, overruled.

In her seventh assignment of error, Napier alleges that she was denied her constitutional right to due process of law because, with respect to the firearm specification, the verdict form submitted to the jury was defective.  This assignment is overruled.

The verdict form provides in pertinent part as follows:

"We further find that the defendant Ella Napier, (X) did ( ) did not CHECK ONE have on or about her person, or under her control, a firearm whole [*sic*] committing the offense charged in Count One or a lesser included offense."

Napier asserts that the form is defective because (1) the jury was required to write the word "did" in ink on the form while the words "did not" were typewritten, and (2) due to a typographical error or otherwise, the word "whole," instead of the correct term "while," appears in the form.

We note, initially, that a review of the record indicates that Napier failed to object to the content of the verdict form before the jury began its deliberations.  As a result, the scope of our review is limited to determining whether plain error occurred pursuant to Crim.R. 52(B).  *State v. Williams* (Mar. 24, 1995), Trumbull App. No. 89–T–4210, unreported, 1995 WL 237092.

It is difficult to imagine how Napier was prejudiced as a result of the alleged minor defects in the verdict form, particularly in light of the undisputed evidence adduced at trial that Napier secured a gun and shot Biedenbach in the head, and without more, we certainly cannot conclude that the outcome of the trial would have been different had the defects been removed from the form.

In her final assignment of error, Napier alleges that she was denied the effective assistance of counsel at trial. The gravamen of this assignment is trial counsel's failure to object to improper argument of the prosecutor, to object to the defective nature of the verdict form, and to object to a portion of the trial court's instructions on self-defense. This assignment is overruled.

In order to sustain a claim of ineffective assistance of counsel, an appellant must demonstrate that counsel's representation fell below an objective standard of reasonableness and that he was prejudiced as a result of his counsel's actions or inaction. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The United States Supreme Court, in *Lockhart v. Fretwell* (1993), 506 U.S. 364, 369–371, 113 S.Ct. 838, 843, 122 L.Ed.2d 180, 189–190, held that a showing of prejudice does not depend solely on whether the outcome of the trial would have been different but for counsel's error. The appropriate standard involves an inquiry into whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* at 372, 113 S.Ct. at 844, 122 L.Ed.2d at 191. In examining the actions of trial counsel, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

The record in the instant case does not demonstrate that the legal representation provided to Napier fell below an objective standard of reasonableness. To the contrary, it is manifest from the transcript of the proceedings that Napier's two defense counsel were aggressive advocates who competently and zealously represented her during the trial. The fact that defense counsel failed to object to a prosecutor's closing argument that was not prejudicial and to a verdict form which contained a harmless defect does not, in any way, lead us to conclude otherwise. While defense counsel's failure to object to the improper instruction on self-defense was a more serious matter, we cannot say, on the state of this record, that it rendered the result of the trial unreliable or the proceeding fundamentally unfair. The eighth assignment of error is without merit.

Based upon our holding in response to a portion of the second assignment of error, we reverse the judgment of the trial court and remand this cause for further proceedings in accordance with the law.

*Judgment reversed*
*and cause remanded.*

DOAN, J., concurs.

GORMAN, P.J., dissents.

GORMAN, Presiding Judge, dissenting.

Reacting to the mandatory sentence of confinement imposed on a sixty-one-year-old woman, the majority, left to its own devices, has reversed the jury's verdict, but not on any claim of error raised by Napier either in the trial court or here.

Napier's assignment of error, as set out in her brief, challenges the third prong of the test for self-defense in *State v. Robbins* (1979), 58 Ohio St.2d 74, 12 O.O.3d 84, 388 N.E.2d 755. Specifically, she claims that a portion of the instruction by the court, included in 4 Ohio Jury Instructions (1994), Section 411.31, stating "the defendant must not have violated any duty to avoid the danger," conveyed to the jury the mistaken notion that she had a duty to retreat while she was standing on her front porch. The basis for her objection and recommendation to the trial court was to modify the standard instruction by omitting this third prong from the self-defense instruction. The instruction, without Napier's modification, was a correct statement of the law defining self-defense, and therefore, the trial court's refusal to delete the third prong approved in *State v. Robbins* was not error.

The majority has recast Napier's assignment of error, in light of *State v. Williford* (1990), 49 Ohio St.3d 247, 551 N.E.2d 1279. The majority *sua sponte* finds that the trial court should have expanded its instruction on self-defense by including an additional definition under the *Peacock* rule to clarify when there is a "duty to retreat or to avoid the danger." When, as here, counsel did not apprise the trial court of the reasons, identified after the fact by the majority as an objection to the instruction, the effect is to require trial judges to read counsel's mind and divine the correct ruling based upon what counsel intended or should have intended.

Although Crim.R. 52(B) allows an appellate court to notice *sua sponte* plain error, invocation of the rule is limited to "exceptional circumstances in order to prevent a manifest miscarriage of justice." *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 4 OBR 580, 580–581, 448 N.E.2d 452, 453. Plain error not of constitutional magnitude exists where it appears "in the record that an error occurred and that except for that error the outcome of the trial would have been different." *State v. Colwell* (Dec. 7, 1994), Hamilton App. No. C–930806, unreported, 1994 WL 680131; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804. The question is whether the alleged error "substantially affected the outcome of the trial." *State v. Slagle* (1992), 65 Ohio St.3d 597, 604–605, 605 N.E.2d 916, 925. Nonconstitutional error is harmless if there is substantial other evidence to support the guilty verdict. *State v. Webb* (1994), 70 Ohio St.3d 325, 335, 638 N.E.2d 1023, 1032; *State v. Mabrey* (May 17, 1995), Hamilton App. No. C–940218, unreported, 1995 WL 298194.

This appeal is distinguishable from *State v. Williford, supra.* In *Williford,* counsel objected to the self-defense instruction on grounds that the trial judge did not include the *Peacock* rule. This fact was the basis of the Supreme Court's explanation why the error was preserved under Crim.R. 30(A). Here, Napier did not preserve the error as provided in Crim.R. 30(A) because she did not state "specifically the matter to which [s]he objects and the grounds of [her] objection." Her objection, both in the trial court and on appeal, was on a different ground than that now addressed *sua sponte* by the majority. Cursory review of the record demonstrates that the jury rightfully rejected self-defense by concluding that Napier's use of force in shooting the victim was unreasonable. No matter how many times this case is tried or retried the verdict inevitably will be the same. Notwithstanding the majority's recasting of the assignment of error, the instruction was simply a recitation of the defense of self-defense from Ohio Jury Instructions upon which every trial judge relies. See, *e.g., Kurzner v. Sanders* (1993), 89 Ohio App.3d 674, 679, 627 N.E.2d 564, 567. Moreover, this instruction has been approved by the Supreme Court of Ohio. *State v. Koss* (1990), 49 Ohio St.3d 213, 215–216, 551 N.E.2d 970, 973; *State v. Williford; State v. Robbins,* paragraph two of the syllabus.

The practice by an intermediate appellate court to raise new issues *sua sponte* is contrary to App.R. 12(A)(1)(b), which admonishes a reviewing court to "determine the appeal on its merits on the assignments of error set forth in the briefs." The second chance for Napier by the generosity of the majority's newly formulated issue interjects unfairness and unpredictability for the trial judge as well as encourages an erosion of traditional considerations favoring finality.