[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This is an appeal by James Morgan, Appellant, from a judgment of the Common Pleas Court of Shelby County finding Appellant guilty of aggravated murder in violation of R.C.2903.01, following a jury trial. Appellant was sentenced to life imprisonment with parole eligibility after serving twenty years and an additional three year term to be served consecutively for a gun specification.
The events leading to Appellant's conviction began on May 15, 1997. Appellant spent that evening at the Pub, a local bar in Sidney, Ohio, where he had an altercation with Steven Scott Reed, the victim in this case. Appellant and Reed had once been friends, however, by May of 1997 the friendship had soured and the two had a growing animosity for one another. That evening, Reed encountered Appellant at the Pub and rekindled an old argument. Although the two exchanged heated words, Reed subsequently left the Pub with his friends, Fred Buss and Steve Martin. Reed, Buss and Martin later returned to the bar and stayed until closing at which time Reed again confronted Appellant in the parking lot of the Pub. By all witness accounts, Reed was the aggressor and instigator of the fray. The argument broke up without incident and the parties retreated to their vehicles.
Apparently unwilling to let the dispute drop, Reed accompanied by Buss and Martin, followed Appellant and his two friends back to Appellant's home in the early morning hours of May 16, 1997. Aware that he was followed home, Appellant grabbed a gun from inside his house and proceeded outside to an area near the public sidewalk where he was met by an argumentative Reed. According to Appellant, Reed brandished a knife and swung at him. Claiming self defense, Appellant discharged three bullets toward Reed. Two bullets struck Reed who ran stumbling into a neighboring yard where he was later found mortally wounded. No other witness at the scene reported seeing Reed with a knife nor was a knife recovered at the crime scene by police.
Based on these events, Appellant was indicted on May 23, 1997 on one count of aggravated murder, in violation of R.C. 2903.01, with a gun specification. Appellant pled not guilty to the charge and a jury trial ensued in August of 1997. The jury was not persuaded by Appellant's claim that he was acting in self defense and instead rendered a verdict of guilty on the charge of aggravated murder. Consequently, Appellant was convicted and sentenced as described above. Appellant now appeals his conviction and sentence, asserting three assignments of error for our review.
 I.
Appellant's conviction should be reversed because at trial he had ineffective assistance of counsel whose performance was deficient, depriving Appellant of a fair trial.
In his first assignment of error, Appellant claims he was denied effective assistance of counsel because his trial attorney failed to conduct any investigation of the events of May 16, 1997, failed to impeach a State witness at trial with a prior inconsistent statement, and failed to object to incomplete jury instructions. In a claim of ineffective assistance of counsel, the burden is on Appellant to prove that counsel's performance was deficient, and that the deficient performance prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 687. The Supreme Court of Ohio has held that counsel's performance is deficient if it falls below the objective standard of reasonable representation. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. In order to show prejudice, the Appellant must demonstrate that were it not for counsel's poor performance, the outcome of the trial would have been different.Id. at paragraph three of the syllabus.
At the heart of Appellant's claim that trial counsel failed to properly investigate his case is an allegation that subsequent to the trial, witnesses have come forward with information substantiating his claim of self defense. Appellant contends that had counsel performed a proper and thorough pretrial investigation, these witnesses would have been identified and could have testified on his behalf at trial.
Initially, we note that our review of Appellant's claims is limited to the facts in the record. The truth of whether or not such witnesses described by Appellant exist and the testimony they would give, is not in the record before this court. Based on the information properly before this court, we find no indication that trial counsel failed to investigate the necessary witnesses in Appellant's case or otherwise failed to prepare for trial.
Likewise, although Appellant claims his trial counsel should have impeached the State's witness with a prior inconsistent statement there is nothing in the record to demonstrate that the witness actually ever made the alleged prior inconsistent statement. At trial, counsel challenged a State witness's testimony as being contrary to a statement the witness had allegedly made to police. This police statement is not in the record. Therefore, we cannot say that trial counsel was ineffective for failing to impeach the witness. It is entirely feasible that counsel was simply testing the witness's memory or resolve by challenging him with a purportedly contradictory statement or perhaps counsel believed further examination of the issue was simply not necessary. "Strategy and tactical decisions exercised by defense counsel `well within the rage of professionally reasonable judgment' need not be analyzed by a reviewing court." State v. Walker (1993), 90 Ohio App.3d 352, 359
quoting Strickland, 466 U.S. at 699.
Lastly, we find no evidence of ineffective assistance of counsel regarding trial counsel's failure to object to "incomplete" jury instructions in this case. Although Appellant claims counsel failed to object to jury instructions which failed to accurately reflect that Appellant had no duty to retreat from his home, we find such an objection was not warranted in this case.
Generally, a person may not kill in self defense if he has available to him a reasonable means of retreat from the conflict.State v. Williford (1990), 49 Ohio St.3d 247, 250. In Ohio, this duty to retreat does not extend to a person's home since the Supreme Court of Ohio has held that, `[w]here one is assaulted inhis home, or the home itself is attacked, he may use such means as are necessary to repel the assailant from the house, or to preventhis forcible entry, or material injury to his home, even to the taking of life.'" (Emphasis added.) Id. quoting State v. Peacock
(1883), 40 Ohio St. 333, 334.
The facts in this case do not implicate this rule since Appellant was not "in his home" at the time he used deadly force to slay Reed nor was Appellant's "home itself attacked." Appellant cites this court to the case of State v. Napier (1995),105 Ohio App.3d 713, wherein the appeals court held that the jury in Ella Napier's trial should have been instructed that Napier did not have the duty to retreat from her home in addition to being instructed on the law of self defense. However, the facts inNapier are distinguishable from the instant case. In that case, Napier shot a man while standing on the front porch of her house. In this case, Appellant proceeded outside his house, down the porch steps, and across his front yard before shooting his victim. By all witness accounts, Steven Scott Reed was shot while standing on or immediately about the area of the public sidewalk outside Appellant's home. These facts demonstrate that Appellant was not "in his home" nor was his home under attack when he shot Reed. Consequently, an instruction regarding the "no duty to retreat" rule was not warranted. We find no error in trial counsel's failure to object to the jury instructions provided in this case. Appellant's first assignment of error is overruled.
 II. The trial court erred in failing to properly instruct the jury on Appellant's self-defense and the fact that he was not required to retreat from the protection of his home and family.
Appellant's second assignment of error contains remnants of his "no duty to retreat" argument discussed above. In this assignment of error, Appellant claims that the trial court was obligated to give the jury complete instructions but failed to do so when it omitted instructions on the law regarding defense of one's home. Appellant further argues that such an instruction was warranted because he was privileged to act in defense of family members inside his home.
As a threshold matter, we note that trial counsel failed to object to the instructions as given by the trial court in this case. As a result, absent plain error, any error in the jury instructions has been waived. Crim.R. 52(B); State v. Underwood
(1983), 3 Ohio St.3d 12, syllabus.
We find no error in the charge imparted to the jury. The facts of this case do not establish that Appellant's family was in any danger at the time Appellant shot Reed. It is undisputed that Appellant's family was asleep inside the house at the time of the altercation. Even assuming, arguendo, Appellant was correct that Reed was wielding a knife, there is no indication that Reed posed any harm to the occupants of the house. Reed was clearly seeking to confront Appellant, who was outside his house at the time of the altercation. For these reasons and for the reasons discussed in our analysis of Appellant's first assignment of error, the facts of this case did not require an instruction on the "no duty to retreat" rule. Appellant's second assignment of error is overruled.
 III. The Appellant's conviction is against the manifest weight of the evidence when the evidence established the Appellant acted in self-defense or that he acted under the influence of sudden rage or passion brought on by serious provocation occasioned by the victim.
In his final assignment of error, Appellant alleges that his conviction is against the manifest weight of the evidence.
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief."
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) at 1594.
Appellant was charged with aggravated murder with a gun specification. The State had the burden of proving beyond a reasonable doubt that Appellant "purposely, and with prior calculation and design, cause[d] the death of another[.]" R.C.2903.01. Although Appellant claimed that he acted in self defense, the jury clearly was not persuaded on this point. We find the weight of the evidence supported the jury's finding of guilt on the charge of aggravated murder with the gun specification.
The evidence presented at trial established that prior to the murder, Appellant and Reed had a contentious relationship. Reed was upset with Appellant about a botched car deal and about a fight Appellant picked with Reed's younger brother, Eric. On prior occasions, Appellant and Reed had exchanged threats. At least three witnesses who testified at trial said that they had overheard Appellant threaten to shoot Reed if Reed ever came to Appellant's home. One of these witnesses, Appellant's own cousin, stated that Appellant told him he could shoot Reed on his property and claim self defense.
The feud between Reed and Appellant continued the evening of the murder, stretching from the Pub to Appellant's home. Appellant knew Reed, Buss and Martin followed him and his friends home. When Appellant arrived first, he proceeded inside his home and grabbed a 38 Special from his bedroom. Reed, Buss, and Martin pulled up shortly thereafter. Appellant walked outside with his gun. There was conflicting testimony about whether or not Reed, Buss and Martin had all exited Martin's truck or whether Reed alone confronted Appellant. In any case, the confrontation was quick. Appellant simply walked up to meet Reed and fired three shots. Although Appellant claims he warned Reed to get off his property before shooting him, no other witnesses confirmed such a statement. One bullet struck Reed in the chest and another in the back, apparently as he bent over and turned to run. The third bullet was not recovered. Interestingly, after the shooting, Appellant called 911. On the tape of the call, Appellant reports the shooting and inquired of the dispatcher, "I had the right to defend myself, didn't I?"
Forensics experts testified Reed had been shot from a distance of approximately 18 inches. An atomic absorption test showed high amounts of gun residue on Reed's palms which would be consistent with witness testimony that before being shot, Reed raised his hands in the air in a gesture of surrender.
Appellant proceeded at trial with the defense of self defense. To establish this defense, Appellant had the burden to demonstrate:
 "(1) * * * [he] was not at fault in creating the situation giving rise to the affray; (2) * * * [he] has [sic] a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of * * * force; and (3) * * * [he] must not have violated any duty to retreat or avoid the danger. * * *"
Williford, 49 Ohio St.3d at 249 quoting State v. Robbins (1979),58 Ohio St.2d 74, paragraph two of the syllabus.
Although all the witnesses agreed that Reed was the aggressor on the evening in question, accosting Appellant twice at the Pub and then following him home in Martin's truck, none of the confrontations Reed instigated led to physical violence until the fatal moment at Appellant's house. Nonetheless, Appellant claims he believed he was in danger for his life given the threats Reed had made against him and given the fact that Reed had a knife when he came to his house and attempted to cut him. According to Appellant, this knife was first shown to him earlier in the evening while he and Reed were arguing at the Pub. Fred Buss displayed the knife and made it known that it would be available to Reed should he have a need for it. While Appellant testified to this effect, Buss denied possessing a knife the evening of the murder or seeing Reed with a weapon. No other witnesses saw a knife nor did police find a knife in their exhaustive search of the crime scene. Clearly, the bulk of witness testimony belied Appellant's claim that Reed was carrying a weapon at the time he was shot. Moreover, the jury also could have easily concluded Appellant had a duty to retreat from any perceived danger posed by Reed. Consequently, the weight of the evidence supports the jury's conclusion that Appellant was not lawfully acting in self defense when he shot Reed. Rather, the evidence supports the conclusion that Appellant acted with a prior calculation in purposely shooting Reed and ultimately causing his death. Appellant's third assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and HADLEY, J., concur.