DECISION AND JUDGMENT ENTRY
This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. The jury found John Nichols, defendant below and appellant herein, guilty of involuntary manslaughter in violation of R.C.2903.04(B). The following error is assigned for our review:
 "THE TRIAL COURT ERRED IN FAILING TO INSTRUCT ON THE ISSUE OF SELF DEFENSE."
On the evening of September 14, 2000, Kevin Meadows and his fiancee, Kelly Faulkner, visited "Doc's Legends" on Gallia Street, in Portsmouth, for that establishment's "all the beer you can drink for ten bucks" night. Apparently this promotion drew large crowds. During the evening Kevin Meadows used the restroom facilities and met appellant, whom he greeted with the salutation "Hey, Limpy."[1] This derogatory reference apparently angered appellant. The two men shoved each other and exchanged words. That confrontation broke up and Meadows and appellant went their separate ways.
That same night, specifically between midnight and 1:00 AM, Meadows and Faulkner left "Doc's" and walked to their car in the parking lot. Although the precise chain of events is in dispute, it is uncontroverted that appellant walked to the parking lot after Meadows. Appellant and Meadows then began fighting. During the fight appellant kicked Meadows, who was very intoxicated, to the ground. When Meadows tried to get to his feet, appellant kicked him several times in the head and then abruptly walked toward the nearby train tracks.
Charles Holsenback, the owner of "Doc's Legends", followed appellant and brought him back to the tavern. At this time the police had arrived at the scene and questioned appellant. Unfortunately, the blows to Kevin's head lacerated a vertebral artery, thus causing a fatal hemorrhage around his brain stem.
On October 17, 2000, The Scioto County Grand Jury returned a two count indictment charging appellant with reckless homicide, in violation of R.C. 2903.04, and involuntary manslaughter, in violation of R.C.2903.04(B). Appellant entered "not guilty" pleas and the matter came on for a jury trial over several days in March, 2001. At the conclusion of trial, appellant requested that the trial court instruct the jury on self-defense. The trial court denied appellant's request. After the jury could not reach a verdict on the reckless homicide count, the trial court declared a mistrial on that charge. The jury did, however, find appellant guilty of involuntary manslaughter for which the trial court imposed a three year prison sentence. This appeal followed.
Appellant argues in his sole assignment of error that the trial court erred by denying his request for a self-defense jury instruction. We disagree.
Our analysis begins with the premise that self-defense is an affirmative defense and the burden of going forward with evidence to prove self-defense rests entirely on the accused. See R.C. 2901.05(A);also see State v. Palmer (1997), 80 Ohio St.3d 543, 563, 687 N.E.2d 685,703; State v. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166, at the syllabus, affirmed in Martin v. Ohio (1987), 480 U.S. 228,94 L.Ed.2d 267, 107 S.Ct. 1098. A trial court does not err by refusing to instruct on self-defense when the evidence does not support that defense. Statev. Nielsen (1990), 66 Ohio App.3d 609, 585 N.E.2d 906; State v. Poole
(Jul. 5, 2001), Cuyahoga App. No. 78618, unreported.
To prove self-defense, the evidence must show that: (1) the accused was not at fault in creating the situation that gave rise to the affray; (2) the accused has a bona fide belief that he was in imminent danger of harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or to avoid the danger. State v. Williford (1990), 49 Ohio St.3d 247,249, 551 N.E.2d 1279, 1281; State v. Robbins (1979), 58 Ohio St.2d 74,388 N.E.2d 755, at paragraph two of the syllabus; State v. Melchior
(1978), 56 Ohio St.2d 15, 20-21, 381 N.E.2d 195, 199. See, also, Stewartv. State (1852), 1 Ohio St. 66; State v. Doty (1916), 94 Ohio St. 258,113 N.E. 811.
A reviewing court must review the evidence to determine whether sufficient evidence, if believed, raises a question concerning the existence of the self-defense claim. Melchior. In the case sub judice, we believe that the evidence adduced during trial firmly establishes that appellant was at fault in creating the situation that gave rise to the altercation with Kevin Meadows and in which Meadows lost his life. It is uncontroverted that Meadows and his fiancee left the tavern and walked to their car in the parking lot. Appellant followed them to their car. We note that numerous prosecution witnesses testified to this fact and the defense offered no contradictory evidence on this point. Indeed, appellant testified as follows during cross-examination:
"Q. You're the one that's wanting to fight that evening?
A. Yes.
Q. They're trying to keep you from fighting?
A. Yes.
Q. But you don't want to listen to them?
A. Not right then I didn't.
* * *
 Q. They're still trying to calm you down, but you're not going to be hearing any of it at that point in time? You're bound determined to fight this Kevin Meadows because he called you `limpy'?
A. Because he pushed me.
* * *
 Q. Okay. You don't see him waiting out there to fight you, do you?
A. No.
 Q. Your friends are still wanting you to go back inside at that point in time?
A. Yeah.
Q. Do you listen to your friends then?
A. No.
 Q. Someone, unfortunately, sees Kevin in his automobile somewhere around that point in time; is that right?
A. Yes.
 Q. And he's not right there by the door. He's — how far is it from the door back to where his car was parked:
A. Probably about 60 or 70 feet, maybe more.
* * *
Q. You go back to where he is?
 A. Not exactly where he is, but I walk out to the fence area.
Q. You go to the dumpster area?
A. Yes.
* * *
 Q. I want to make sure I got this straight. You're not saying that Kevin Meadows went out front looking for you —
A. No.
Q. — to fight you?
A. (Shook head.)
 Q. You're not saying Kevin Meadows was looking around inside the bar looking to find you to fight you?
A. Not that I know of.
 Q. You're not saying Kevin Meadows went out the side door looking for you to fight, are you?
 A. I don't know if he did or not. That's what I assumed when I seen him walk out the side door.
Q. Was he looking for you to fight you in his car.
A. No."
This evidence reveals that although Meadows attempted to leave the scene, appellant confronted him in the parking lot. Thus, appellant's own actions caused the altercation. In view of appellant's admissions that Meadows did not seek a confrontation, and that appellant left the tavern in order to find Meadows and to provoke an altercation, a self-defense claim is inappropriate. Ohio courts have long recognized that a person cannot provoke assault or voluntarily enter an encounter and then claim a right of self-defense. State v. Vines (May 29, 1975), Cuyahoga App. No. 33871, unreported, citing Kohner v. State (1927), 6 Ohio L.Abs. 201;State v. Gibbs (Jan. 28, 1982), Lake App. No. 9-018, unreported, Statev. Sanchez (Apr. 24, 1986), Cuyahoga App. No. 50566, unreported. See, also, State v. Moore (1994), 97 Ohio App.3d 137, 646 N.E.2d 470; Statev. Smith (June 27, 1985), Franklin App. No. 94APA12-1702; State v.Duiguid (May 12, 1983), Cuyahoga App. No. 45526, unreported. Thus, we agree with the trial court's conclusion that the evidence adduced below did not support a self-defense jury instruction. Moreover, self-defense is inappropriate if the force used is so grossly disproportionate as to show revenge or as criminal purpose. State v. Speakman (Mar. 27, 2001), Pickaway App. No. 00CA35, unreported. In the instant case appellant inflicted severe harm to Meadows by kicking Meadows in the head. Appellant's use of force appears to have exceeded that which was conceivably necessary to "repel" the attack.
Appellant counter argues by citing State v. Napier (1995),105 Ohio App.3d 713, 664 N.E.2d 1330 for the proposition that a distinction exists between "creating a verbal confrontation, and creating a physical one." He argues that although his "drunken, braggadocio" took him to the parking lot to confront Meadows, the evidence supports appellant's claim that Meadows actually threw the first punch. Therefore, appellant contends he was not at fault for creating the situation and he was entitled to a self-defense instruction. We are not persuaded.
To begin, it is not entirely clear that Napier stands for this particular proposition of law. It appears that our colleagues in the First District Court of Appeals had to determine whether the trial court had correctly given a "noisy quarrel" instruction from 4 Ohio Jury Instructions (1994) 75, § 411.31. Id. at 723, 664 N.E.2d at 1337. Further, we note that this portion of the opinion is dicta, both because (1) it addressed an issue which the court found did not rise to the level of plain error; and (2) the court stated that it reversed the conviction due to an incorrect instruction on the duty to retreat or to avoid danger with respect to one's home. Id. at 722, 664 N.E.2d at 1336. In any event, we find that Napier is distinguishable from the cause sub judice
as it did not address whether a self-defense instruction was warranted, but rather whether the given instruction accurately stated the law.
We also note that the first element of a self-defense claim does not require in all situations that the actor must have refrained from throwing the first punch. Rather, this element provides that the actor must not be at fault in creating the situation that gave rise to the affray. This concept is broader than simply not being the immediate aggressor. Again, a person may not provoke an assault or voluntarily enter an encounter and then claim a right of self-defense. Kohner,supra, Vires, supra; Gibbs, supra; Sanchez, supra.
Appellant argues that this standard would bar anyone who is "verbally aggressive with another" person from claiming self defense should that person later attack him. We disagree. A self-defense claim may be appropriate in some situations, despite past verbal aggression. In this case, however, the facts involved more than mere words. By his own admission, appellant left the tavern seeking to locate and engage Meadows. Appellant followed Meadows to the parking lot when he could have left well enough alone. Appellant was at fault for creating the situation and, thus, not entitled to an instruction on self-defense.
Accordingly, based upon the foregoing reasons we overrule appellant's assignment of error and affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment Opinion.
[1] The name "limpy" apparently referred to a previous incident in which appellant, due to his consumption of alcohol, "couldn't perform" during an attempt at sexual relations.