DECISION.
{¶ 1} Defendant-appellant Jason Bumpus appeals the judgment of the Hamilton County Juvenile Court adjudicating him delinquent following a bench trial. The juvenile court determined that Jason had committed an offense that would have constituted felonious assault if committed by an adult. At trial, Jason had maintained that he was acting in self-defense when he stabbed Julian Solorza (a.k.a. "J.C."). The juvenile court, after issuing findings of fact and conclusions of law, determined that Jason had not demonstrated that he had acted in self-defense. Because we disagree with this conclusion, we reverse the judgment of the juvenile court and discharge Bumpus.
 {¶ 2} The following facts are undisputed and are taken from the record and the juvenile magistrate's findings of fact. On December 31, 2001, Jason's parents hosted a New Year's Eve party for Jason, his brothers and their friends. During the party, there was an exchange of cellular phone calls between people at the Bumpus party and others who had not been invited. The individuals who had not been invited challenged the people at the party to a fight. Jason's brother Mike was on the phone at that time and said, "Bring it on." Nearly 50 juveniles then arrived at the Bumpus residence. People in the Bumpus party, including Jason's parents, attempted unsuccessfully to persuade the uninvited group to leave.
 {¶ 3} J.C. and his friend "Tank" were in the uninvited group that challenged the others to a fight. From the record, it appears that J.C. was two years older than Jason and outweighed him by 45 pounds. J.C. was also a member of the Air Force and was known to associate with people who had a reputation for fighting. Kevin and Mike, Jason's brother, attempted to get the group, including J.C. and Tank, to leave, but Tank pushed Kevin to the ground and the fight began. Kevin sustained substantial injuries to his face.
 {¶ 4} Jason testified that he came out of the house to defend his brothers. He was about to reenter the house as the result of his father's pleas, when he saw his brother Greg lying on the ground and covering his head while being kicked by five persons. Jason went to the aid of Greg by pulling J.C. off of him. The state stipulated that, at this point, Jason was properly acting in defense of his brother.
 {¶ 5} J.C. then began punching Jason, who retreated back into his yard. J.C. followed him onto his property. Jason pulled a knife from his pocket, threatening J.C. This did not deter J.C., who grabbed Jason's throat and began to punch Jason repeatedly in the head. Jason stabbed J.C. in the torso and shoulder to get J.C. to let go of his throat. As soon as J.C. released his grip, Jason dropped the knife.
 {¶ 6} Based on these facts, the juvenile magistrate concluded that Jason had not proved that he had acted in self-defense. Specifically, the magistrate determined that Jason was at fault in giving rise to the fight and that he could not have honestly believed that he was in imminent danger of serious bodily harm. Jason filed objections to the magistrate's decision, but the juvenile court overruled them. In this appeal, Jason now brings forth five assignments of error.
 {¶ 7} In his first assignment of error, Jason asserts that the juvenile court erred in concluding that he had not proved the elements of the affirmative defense of self-defense. We agree.
 {¶ 8} In order to establish the affirmative defense of self-defense, Jason had to prove that (1) he was not at fault in creating the situation giving rise to the fight; (2) that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of force; and (3) that he had not violated any duty to retreat or avoid the danger.[1] The defense had to be proved by a preponderance of the evidence.[2]
 {¶ 9} From the facts set forth in the magistrate's decision, we hold as a matter of law that Jason acted in self-defense.
 {¶ 10} The juvenile court concluded, with respect to the first element, that Jason was at fault for causing the fight. But the facts do not support this conclusion. First, the magistrate found that Jason's brother Mike had issued the challenge for the fight by saying, "Bring it on." There is no evidence that Jason himself had instigated any type of fight. Second, the magistrate found that Jason had been on his porch and about to reenter his home, at his father's request, when the fighting began. Third, Jason only became involved in the fight with J.C. in an attempt to defend his brother. Although the juvenile court concluded that Jason's act of pulling J.C. off of his brother did not satisfy the affirmative defense of defense of others, we note that the state had already stipulated during trial that Jason had the right to defend his brother. Because Jason had the privilege of defending his brother, he could not then be found at fault for starting a fight with J.C. Based on these facts, we hold that Jason demonstrated the first element of self-defense by a preponderance of the evidence.
 {¶ 11} With respect to the second element of self-defense, we note that Jason must have had an honest belief that he was in imminent danger of great bodily harm or death before using force. We have previously held that this is a subjective test, and that the trier of fact "must consider the entire situation and determine whether the person's actions were reasonable under the circumstances."[3] We hold that, as a matter of law, based on the findings of fact issued by the juvenile court, Jason was under the honest belief that he was in danger of great bodily harm. J.C., an adult male in his physical prime who outweighed Jason by 45 pounds, was grabbing Jason's throat, choking him, and all the while pummeling his head. Under these circumstances, we hold that it was reasonable for Jason to have had a genuine and honest belief that he was in danger of serious bodily harm.
 {¶ 12} Finally, while we note that there is no dispute that Jason had no duty to retreat while defending himself on his property, he did in fact retreat after properly defending his brother. J.C. followed him onto his property and continued to beat him.
 {¶ 13} Under the facts of this case as set forth by the juvenile court, we hold, as a matter of law, that Jason proved the affirmative defense of self-defense. Accordingly, the first assignment of error is sustained.
 {¶ 14} As self-defense is a complete defense to the crime of felonious assault, we reverse the juvenile court's judgment and order that defendant-appellant Jason Bumpus be discharged. Because we have sustained the first assignment of error and discharged Bumpus on that basis, we do not address the remaining assignments of error, as they are now moot.
Judgment reversed and appellant discharged.
Doan, P.J., Hildebrandt and Painter, JJ.
[1] State v. Barnes, 94 Ohio St.3d 21, 24, 2002-Ohio-68, 759 N.E.2d 1240, citing State v. Robbins (1979), 58 Ohio St.2d 74, 388 N.E.2d 755, paragraph two of the syllabus.
[2] State v. Martin (1986), 21 Ohio St.3d 91, 488 N.E.2d 166.
[3] See State v. Napier (1995), 105 Ohio App.3d 713, 664 N.E.2d 1330, citing State v. Smith (1983), 10 Ohio App.3d 99, 460 N.E.2d 693.