OPINION
Jessie R. Harris, appellant, appeals the September 24, 1999 judgment of the Franklin County Court of Common Pleas finding him guilty of involuntary manslaughter, in violation of R.C.2903.04, a first degree felony.
On December 22, 1996, appellant and Joe West attended a Christmas party at the Aragon Lounge, where appellant's mother, Frankie Moore, was a bartender. West was Moore's boyfriend. At some point during the party, Tina Dotson argued with a woman near the bar area. Tina Dotson struck the woman in the throat with her forearm, causing the woman to fall from her stool. West observed the incident but did not get involved.
After this incident occurred, as West was attempting to play songs on the jukebox, Dotson, who accused him of making selections using her money, confronted him. As Dotson became angrier, a crowd gathered, and Dotson pushed West against a dart machine. The argument continued, and the crowd eventually moved outside the bar. During these events, appellant's mother and Bud Stewart, the owner of the bar, asked appellant to help West. Appellant agreed and gathered a few of the regular customers to help West.
After being pushed out of the door, West was struck on the head with a brick. Appellant testified that Gary Greer, Dotson's boyfriend, threw the brick. After observing Greer throw the brick, appellant grabbed Greer around the arms and chest. Greer told appellant to let him go or he would cut his "f**king heart" out. Appellant released Greer and then elbowed him.
During this time, several men and women started hitting West. Dotson testified that she continued to hit West in his face while her two uncles, Joe Dotson and Cecil Dotson, bouncers at the bar, held West. Timothy Baker, Greer's friend, testified that he pinned West against a trunk of a car. Dotson testified that she got involved in the fight between West and Baker because she thought Baker was Greer. Fearing that West and appellant would be hurt, Moore walked from behind the bar and went outside. She testified that as she attempted to help West, she eventually ended up on the ground, where others kicked and struck her and West.
After appellant released Greer, two men grabbed him from behind. Appellant was struck on the back with a baseball bat, though he eventually gained control of the bat. Seeing that West was being beaten, appellant rushed to assist him and he testified that it was then that he saw Greer holding a knife. Appellant struck Greer on the head, although he stated that he meant to strike him only on the shoulders. After appellant struck Greer, the fighting stopped, allowing West and Moore to escape. The crowd chased appellant and West from the bar. Moore grabbed her coat and purse from the bar and fled back to her home. Greer was taken to a hospital where, he was removed from life support the following day and died.
On February 6, 1998, appellant was indicted on one count of aggravated murder. A jury trial was held, and the jury found appellant guilty of the lesser included offense of murder. Appellant was sentenced to an indefinite term of imprisonment of fifteen years to life. Appellant appealed his conviction, and inState v. Harris (Aug. 25, 1998), Franklin App. No. 97APA11-1506, unreported, we reversed the conviction due to the failure of the trial court to instruct the jury properly on the privilege of coming to the defense of a third person. After retrial, a jury found appellant guilty of the lesser included offense of involuntary manslaughter. The trial court sentenced appellant to ten years imprisonment. Appellant appeals the judgment of the trial court finding him guilty of involuntary manslaughter, asserting the following three assignments of error:
 I. The Appellant was deprived of the [sic] fair trial guaranteed by the United States and Ohio Constitutions due to the introduction of irrelevant and inflammatory evidence, and the misconduct of the prosecution in closing argument.
 II. Appellant's sentence was in violation of Ohio Revised Code 2945.75(A)(2) because the jury verdict form did not state the degree of the offense to which the defendant was found guilty.
 III. The trial court erred when it instructed the jury that it could infer that Appellant acted to purposely cause the death of the decedent, gave improper instructions on the duty to retreat, and improperly instructed the jury on the inferences it could not draw from the words used by the alleged victim.
Appellant argues in his first assignment of error that he was deprived of a fair trial due to the introduction of irrelevant and inflammatory evidence, and the misconduct of the prosecution in closing argument. Appellant first asserts that he was denied a fair trial because the prosecution improperly asked his wife the following questions regarding appellant's incarceration before the trial:
 Q. Right now from today, being Monday, when was the last time you visited him in the jail?
A. Yesterday.
Q. What did you discuss then?
A. The inheritance money he is getting.
 Q. When is the first time that you talked to Jessie Harris after you picked up your Cutlass at MacDonald's [sic]?
A. When he turned himself in.
* * *
Q. Do you know when it is that he turned himself in?
A. January 28th.
Q. How is it that you know that?
A. It was my mom's birthday.
Q. Had you any conversations with him?
A. At the jail?
Q. Yes, prior to turning himself in.
A. No.
 Q. When was the most recent time you have donated money to this jailhouse?
A. I don't remember.
Q. Do you know where he was during that time?
A. No.
 Q. When was the most recent time you have given him any money?
A. It's probably been two weeks.
Mr. Siewert: Objection.
The trial court overruled appellant's objection but offered to present a curative instruction, which counsel for appellant refused.
The determination as to admissibility of evidence "is a matter generally within the sound discretion of the trial court."Schaffter v. Ward (1985), 17 Ohio St.3d 79, 80. Such determination by the trial court will not be reversed absent a clear abuse of discretion that materially prejudiced the objecting party. Barbeck v. Twinsburg Twp. (1992), 73 Ohio App.3d 587, 592. However, a review of the record reveals that appellant did not timely object to this line of questioning. It is well established that "[t]he parties must object immediately whenever a supposed mistake occurs at the trial level, or the appellate court will consider the failure to object as a waiver of any error."Tradesmen Internatl. v. Bridge (Feb. 6, 1998), Lake App. No. 96-L-072, unreported. Counsel for appellant did not object to the questions regarding appellant's pretrial incarceration. Rather, appellant's counsel waited until the testimony was already in the record and objected only after the prosecutor had asked several follow-up questions unrelated to appellant's incarceration. Thus, we must consider any alleged error under a plain error standard.State v. Long (1978), 53 Ohio St.2d 91. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, where, "but for the error, the outcome of the trial clearly would have been otherwise." State v.Underwood (1983), 3 Ohio St.3d 12, syllabus.
In the present case, we find the trial court's determination was not an error that affected appellant's substantial rights. The prosecutor's stated purpose in raising this issue was to inquire into Anna Harris's credibility, the bias reflected by the financial dependence of appellant on Anna Harris, and the recent discussions she and appellant had about the case. These purposes by the prosecutor were proper. Appellant has failed to point to any authority for the proposition that a reference to a defendant's incarceration during the pendency of a trial is per se prejudicial. Further, the failure to timely object to allegedly prejudicial content constitutes a waiver of error and precludes the trial judge from giving corrective instructions as to that alleged error. State v. Williams (1974), 39 Ohio St.2d 20. However, in the instant case, the court indicated that it would present a curative instruction but appellant refused the court's offer. An instruction could have cured any possible prejudice. In addition, after appellant's counsel untimely objected to this line of questioning, the prosecutor did not ask any further questions regarding this issue. Although we find that the statements were not prejudicial in the present case, we do not condone such references.
Appellant next asserts that the following statements made by the prosecutor during closing arguments constituted prosecutorial misconduct:
 * * * And that is why in opening statement I indicated to you that you have to sit and listen to the testimony as to whether this is legitimate, meaning believable or reasonable, as to what the defendant is saying, or was this created after the fact.
 I know we watch television shows frequently. And you hear about these law shows and how the defense team comes together to create what they believe the facts show in order to —
Mr. Siewert: Objection.
The Court: Overruled.
 Ms. Trent: — get their client off not guilty. Well, listen to the facts in this case. Take a step back. I am going to give you some guidelines as to that.
Appellant claims that the plain import of this statement is that defense attorneys — including the trial counsel for appellant — "manufacture evidence" to "get their client off not guilty."
When reviewing allegations of prosecutorial misconduct, appellate courts must consider that "the touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."State v. Hill (1996), 75 Ohio St.3d 195, 203, quoting Smith v.Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940. The Ohio Supreme Court has declared that prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239, 266. In order to reverse a conviction based on prosecutorial misconduct, the defendant must prove that the comments were improper and that they prejudicially affected the defendant's substantial rights. Statev. Smith (1984), 14 Ohio St.3d 13, 14.
After reviewing the record, we fail to find that this comment by the prosecutor substantially prejudiced appellant's right to a fair trial. Contrary to appellant's assertion, the prosecutor never indicated that the defense counsel in the present case "manufactured" any evidence. Further, the intended purpose of the comment is unclear, thereby negating any effect it could have had on the jury. The prosecutor seemed to be trying to instill upon the jury the importance of judging the credibility of each witness and their motivations or bias with regard to their testimony. Such a purpose is clearly permissible. Further corroborating that this was the prosecutor's purpose in making these statements, the statements were immediately followed by the prosecutor's discussion of the testimony and the credibility of the witnesses in the present case. "[I]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott
(1990), 51 Ohio St.3d 160, 165, quoting State v. Stephens (1970),24 Ohio St.2d 76, 82. The question of the scope of latitude is "generally considered one falling in the first instance within the sound discretion of the trial court." Maurer, supra, at 269, quoting State v. Pustare (1973), 33 Ohio App.2d 305, 312. We find that the trial court did not abuse its discretion in allowing the comments. Appellant's right to a fair trial was not materially prejudiced, and even without the comment, the jury had sufficient evidence to support its determination, which appellant does not contest in his appeal. Therefore, appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that his sentence violated R.C. 2945.75(A)(2) because the jury verdict form did not state the degree of the offense to which he was found guilty. R.C. 2945.75 provides:
 (A) When the presence of one or more additional elements makes an offense one of more serious degree:
 (1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.
 (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.
* * *
R.C. 2903.04 provides, in pertinent part:
 (A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.
 (B) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor other than a violation of any section contained in Title XLV [45] of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV [45] of the Revised Code that is a minor misdemeanor.
 (C) Whoever violates this section is guilty of involuntary manslaughter. Violation of division (A) of this section is a felony of the first degree. Violation of division (B) of this section is a felony of the third degree.
* * *
The record fails to indicate that appellant objected to the verdict form. In general, the failure to object at trial to a verdict form results in a waiver of all but plain error. State v.Williams (1996), 74 Ohio St.3d 569, 574, fn. 1. Therefore, we must determine whether the jury verdict form contains an obvious error or defect that affected appellant's substantial rights and that, but for the error, the outcome of the trial clearly would have been otherwise. Underwood, supra.
The verdict form returned by the jury provided as follows: "We, the jury in this case, find the Defendant Jessie R. Harris not guilty of Murder, as he stands charged in Count One of the Indictment but guilty of the lesser offense of InvoluntaryManslaughter." (Emphasis sic.) Although the judgment entry states that the jury found appellant guilty of R.C. 2903.04(A), a first degree felony, the jury verdict form did not state the degree of the offense of which appellant was found guilty. As a result, appellant argues that the jury could have only found him guilty of the lesser degree of the offense of involuntary manslaughter, a third degree felony.
While this verdict does not strictly comply with the requirements of R.C. 2945.75, courts have found that under certain circumstances, such verdict forms may still be deemed to have substantially complied with the statute. In State v. Woods
(1982), 8 Ohio App.3d 56, 63, the court found that the failure to strictly comply with R.C. 2945.75(A)(2) does not constitute reversible error when the verdicts incorporate the language of the indictments, the evidence overwhelmingly shows the presence of aggravating circumstances, and defendants never objected at trial to the form of the verdicts. See id., at 63; State v. Corkran
(1965), 3 Ohio St.2d 125, paragraph two of the syllabus; State v.Ridgeway (1972), 35 Ohio App.2d 254. In addition to the court inWoods, other courts have likewise found substantial compliance with the requirements of R.C. 2945.75 in verdict forms when the indictment was read to the jury and/or the language of the offense was included in the charge to the jury. See State v. Hawkins (May 19, 1997), Portage App. No. 96-P-0213, unreported; State v. Davis
(Jan. 27, 1992), Ross App. No. 1746, unreported. Thus, the findings of statutory compliance hinge on the fact that the jury was read the indictment or was otherwise instructed on the proper elements of the offense by the trial court.
As stated previously, appellant made no objection to the verdict form at trial. Further, we find that there was substantial evidence that appellant committed felonious assault, a felony, thereby bringing the death under the purview of first degree involuntary manslaughter pursuant to R.C. 2903.04(A). In addition, the facts of this case support a finding of substantial compliance with R.C. 2945.75(A)(2) because the trial court accurately enunciated the necessary elements required for a finding of first degree murder, as charged in the indictment, the lesser included offense of involuntary manslaughter, and felonious assault. The trial transcript confirms that upon the close of appellant's case, the trial court informed the jury of the definition of felonious assault, which was necessary in order to find appellant guilty of first degree involuntary manslaughter. As a result, the charge given to the jury for use in determining appellant's guilt actually defined felony assault and not misdemeanor assault, and, thus, it is apparent that the jury could not have found appellant guilty of the lesser offense of third degree involuntary manslaughter.
Under the circumstances of this case, we cannot see any way in which appellant was prejudiced, as there was no ambiguity. The jury was properly instructed concerning the necessity of making the required finding, the evidence was clear, and the outcome of the trial would not have been different if the disputed provision had been included in the verdict form. Given this charge and the fact that appellant did not object to the verdict form at the time of trial, we find the verdict form sufficiently complied with the mandates of R.C. 2945.75. Consequently, the jury's guilty verdict in this case can only constitute a finding of guilt of first degree involuntary manslaughter. Appellant's second assignment of the error is overruled.
Appellant first argues in his third assignment of error that the trial court erred in instructing the jury:
 If a wound is inflicted with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon, along with all of the other facts and circumstances in evidence.
Appellant did not object to this instruction at trial. Absent plain error, the failure to object to the jury instructions under Crim.R. 30 is a waiver of the claim of error on appeal.Underwood, supra, at syllabus. The above instruction was read nearly exactly as set forth in 4 Ohio Jury Instructions (1997) 58, Section 409.01(6). The Supreme Court of Ohio has on at least one occasion upheld the validity of this instruction. See State v.Loza (1994), 71 Ohio St.3d 61. We find no plain error in this instruction.
Appellant next argues that the trial court gave improper instructions on the duty to retreat. Although it is unclear as to which specific instruction appellant objects, the trial court gave the following instruction on the duty to retreat:
 A person may not use deadly force in defense of another if the person being defended has a reasonable means to retreat from the confrontation.
Although this is a correct statement of law, appellant argues that it is incorrect as applied to the facts of this case because Frankie Moore, appellant's mother, was privileged to go to the defense of her boyfriend, Joe West, and had no duty to retreat as long as the perceived danger to West existed. Appellant maintains that although Moore could have easily retreated or avoided the fight altogether, she had a duty to protect a patron of the bar under a tavern keeper's common-law duty to protect patrons from assault by a third person. Appellant asserts that this fact was not properly conveyed to the jury. Again, appellant failed to object to this instruction at trial, and, therefore, we review the alleged error under the plain error standard.
Under a theory of negligence, a tavern keeper, while not an insurer of guests' safety, owes them a duty to exercise reasonable care to protect them from reasonably foreseeable injury at the hands of other patrons. See Annotation (1986), 43 A.L.R.4th 281; Howard v. Rogers (1969), 19 Ohio St.2d 42. Appellant cites Mason v. Roberts (1973), 33 Ohio St.2d 29, for the proposition that "a business establishment" has a duty to protect its patrons from injury by third persons. However, the precise wording of the second paragraph of the syllabus in Mason is:
 The proprietor of a business establishment wherein alcoholic beverages are dispensed for consumption upon the premises owes a duty to members of the public while they are in his place of business to exercise reasonable care to protect them from physical injury as a result of violent acts of third persons. Id. at paragraph two of the syllabus. (Emphasis sic.)
The syllabus in Mason makes it clear that only the "proprietor" of the establishment has such a duty. Further, it has been held that a "tavern keeper" as described in R.C. 4399.16, which provides that no tavern keeper shall permit rioting, reveling, intoxication, or drunkenness in its house or on his premises, refers to the owner of a tavern business and not to a mere employee, bartender, or manager. State v. Gullion (C.P. 1955), 71 Ohio Law Abs. 546 * * *. In addition, that there is a distinction between a "proprietor" and a mere employee or manager is made clear in R.C. 4399.14, which provides, in pertinent part:
 No person who is the proprietor of any public dance hall, or who conducts, manages, or is in charge of any public dance hall, shall allow the use of any intoxicating liquor or the presence of intoxicated persons in such dance hall or on the premises on which such dance hall is located * * *.
Moore was not the owner or proprietor of the Aragon Lounge but was merely a bartender. Therefore, we find appellant cannot rely uponMason, supra. Notwithstanding this semantic issue, appellant fails to point to any case law or other authority to support the application of this common-law duty under a negligence theory to a criminal action. We do not find plain error in the trial court's instruction on this issue.
Appellant also argues that the trial court improperly instructed the jury on the inferences it could not draw from the words used by the alleged victim. Again, appellant did not object to this instruction before the trial court, and, therefore, our review is under the plain error standard. The trial court's instructions with regard to the use of words by the victim were:
 Resort to the use of of [sic] a deadly weapon is not permitted because of words. Vile or abusive language or verbal threats, no matter how provocative, do not justify an assault or the use of a deadly weapon.
Appellant asserts that this instruction is an erroneous and misleading statement of law because threats can justify a defensive response. However, the trial court's instruction is a correct statement of the law. State v. Napier (1995), 105 Ohio App.3d 713,723; Bucyrus v. Fawley (1988), 50 Ohio App.3d 25. The quoted passage follows closely 4 Anderson's Ohio Jury Instructions (1997) 78, Section 411.35(1). Further, appellant asserts that evidence that Greer said he would cut appellant's heart out when coupled with the testimony that Greer was brandishing a knife, could properly raise a case of self-defense. However, appellant's argument adds another element beyond mere words, i.e., that Greer was, in addition to making verbal threats, brandishing a knife. Likewise, appellant's example of a police officer's right to act in self-defense when confronted with verbal threats from a person who reaches into his pocket to retrieve a gun, suffers from the same fallacy. We find no plain error in the court's instruction. Therefore, appellant's third assignment of error is overruled.
Accordingly, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
BOWMAN, P.J., and KLINE, J., concur.
KLINE, J., of the Fourth Appellate District, sitting by assignment under authority of Section 6(C), Article IV, Ohio Constitution.