OPINION
This appeal is brought by Jesus Torres, III from the judgment of the Court of Common Pleas, Defiance County, sentencing him to the Ohio Department of Rehabilitation and Correction for a term of eight years. For the reasons stated below, we reverse and remand for new trial.
The record presents the following facts. On July 5, 2000 and into the early morning hours of July 6, 2000 the Defendant-Appellant Jesus Torres and Carlos Marroquin were involved in three separate altercations.
The first incident was a verbal disagreement that took place at Jammers, a dance cafe in Defiance, Ohio. A cafe employee broke the pair up before the argument could escalate into violence. That same evening, while still at Jammers, an arrangement was made for Torres and Marroquin to meet in the parking lot of another night club in order to continue their fight. The record presents conflicting testimony as to which party initiated this meeting. Both Marroquin and Torres testified that they were told by a club employee, Joe Martinez, that the other wanted to continue the fight elsewhere.
Orchestration aside, Marroquin and Torres followed through with the proposal and met at the designated location, the parking lot of the nearby Latin Club, and proceeded to engage in a physical altercation until a third party intervened and broke up the brawl. Witnesses testified that the confrontation consisted mostly of wrestling which is supported by Torres' testimony that he lost the fight due to Marroquin's use of wrestling techniques. Andrew Shirk, one of Marroquin's companions testified that his friend dominated the fight against Torres. Furthermore, two witnesses testified that just prior to the fight being broken up, Marroquin had Torres pinned down on the ground and was delivering blows to Torres with a closed fist.
After the fight at the Latin Club, Torres and his group, which consisted of his girlfriend Priscilla, his sister Norma, and his sister's friend Joe (not the same Joe who set up the fight), drove back to Jammers so that Torres and Priscilla could retrieve Pricilla's vehicle. Norma had driven the group to the Latin Club. Marroquin, along with his two companions, followed Torres back to Jammers for no other reason than to continue the fight verbally. Marroquin testified that Torres had spit on him and told Marroquin to follow him. Torres denied this version of events and testified that as far as he was concerned the fight was over and that he was going home. Torres further testified that as he and Priscilla proceeded to her car in Jammers' parking lot, Marroquin showered him with verbal insults. Torres testified that he ignored the taunts and got into the car with Priscilla.
Torres and Priscilla drove away from Jammers and proceeded to the Speedway gas station where his sister was using a pay phone. Priscilla pulled into the gas station and parked directly in front of the convenience store. Torres got out of the vehicle in order to go into the store. At this point, Marroquin and his companions arrived and pulled up directly to where Torres was standing by Priscilla's car.
Marroquin testified that he and his companions drove to the Speedway to purchase cigarettes but were able to find a pack in the back seat, negating their need to go into the store. Priscilla testified that Torres and Marroquin began a verbal confrontation initiated by Marroquin. The record then indicates that Torres, without ever going into the store, got back into the vehicle. Thereafter, Priscilla pulled out of the parking spot in front of the store and pulled over to where Norma, Torres' sister, was using the payphone, leaving Marroquin behind.
A Speedway security videotape entered into evidence shows Marroquin's vehicle following behind Priscillia's vehicle across the Speedway parking lot. In addition, the videotape shows a person, identified on the stand by a police witness as Marroquin, leaning out of the passenger side of the vehicle gesturing toward Torres' car.
Pricilla stopped her car in the Speedway parking lot where Norma was using the phone. Pricilla testified that Marroquin's vehicle pulled up behind her, and then pulled around to the passenger side where Torres was sitting. At this point Torres and Marroquin began shouting at each other. When Norma pulled away from the pay phone, Priscilla pulled forward, leaving Marrqoquin's vehicle behind once again.
Rather than leave the gas station, Norma pulled her car around and positioned her self-perpendicular to Marroquin's vehicle. She then got out of the car and began yelling at Marroquin, who was sitting in the passenger seat, through the driver's side window. At all times during this scene leading up to the eventual assault, both Priscilla's vehicle and Marroquin's vehicle had a clear path to leave the gas station.
As Norma was still arguing with Marroquin and his companions, Torres suddenly exited Priscilla's car. Witnesses testified that as he exited the car, Torres carried a beer bottle in his hands. Marroquin's companion's saw Torres coming around the rear of the car and alerted Marroquin who then exited the car.
A physical fight ensued during which Torres broke the beer bottle over Marroquin's head and then stabbed him with the remaining piece. The fight ended when Torres fled back to Priscilla's vehicle. Witnesses testified that Marroquin chased after Torres, banging on the car as it drove away. Thereafter, Marroquin's friends took him to the hospital where he received over 65 stitches and was then released.
Torres, who was on post-release control supervision with the Ohio Adult Parole Authority, was subsequently contacted by his Supervising Parole Officer regarding the incident. At trial, Torres admitted to breaking the bottle over Marroquin's head and then using it to stab the man.
A grand jury indicted Torres on one count of felonious assault, a violation of R.C. 2903.11(A)(2) and on December 20, 2000 the matter came to trial before a jury. At the close of the presentation of evidence Torres, through his court appointed counsel, requested that the jury be given an instruction on the inferior offense of aggravated assault due to the existence of substantial provocation on the part of Marroquin. The trial court denied the motion and shortly thereafter the jury returned a verdict of guilty. The trial court sentenced Torres to the eight years incarceration, the maximum term. It is from this order that Torres now appeals.
Appellant raises the following assignments of error:
 The trial court erred in sentencing the appellant to the maximum time of incarceration
 The trial court committed prejudicial error when it refused to instruct the jury on the inferior degree of felonious assault, the offense of aggravated assault. ORC 2903.12.
Since we believe the second assignment of error to be dispositive of this appeal, we consider it first. In his second assignment of error Appellant argues that the trial court committed an abuse of discretion when it when it refused to instruct the jury on the inferior degree of felonious assault, the offense of aggravated assault. R.C. 2903.12.
While a trial court has broad discretion to determine how it will instruct a jury, the court has a duty to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v.Comen (1990), 50 Ohio St.3d 206, 210. "Additionally, a trial court may not omit a requested instruction, if such instruction is `a correct, pertinent statement of the law and [is] appropriate to the facts * * *.'"State v. Poe (Oct. 6, 2000), App. No. 00 CA 019, Jackson County (quotingState v. Lessin (1993), 67 Ohio St.3d 487, 493).
When a trial court is faced with the decision whether to give a requested instruction, the appropriate inquiry is whether sufficient evidence has been presented to support the instruction. State v. Mitts
(1998), 81 Ohio St.3d 223, 228. A reviewing court must then determine whether the trial court abused its discretion in determining that the evidence was insufficient to support the requested charge or in determining that the requested instruction was not pertinent to the crime charged. State v. Wolons (1989), 44 Ohio St.3d 64, paragraph two of the syllabus.
Therefore, our first inquiry into the case at bar is whether the appellant presented sufficient evidence to warrant the instruction on aggravated assault. The elements of aggravated assault and felonious assault are identical except for aggravated assault's additional mitigating element of serious provocation. State v. Mack (1998),82 Ohio St.3d 198, 200. In a trial for felonious assault, an instruction on aggravated assault must be given to the jury when the defendant has presented sufficient evidence of serious provocation. R.C. §2903.12(A)(2).
The Ohio Supreme Court established the appropriate standard for determining the necessity of an instruction on aggravated assault in State v. Deem (1988), 40 Ohio St.3d 205:
 "[I]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation (such that a jury could both reasonably acquit defendant of felonious assault and convict defendant of aggravated assault), an instruction on aggravated assault (as a different degree of felonious assault) must be given." Id. at 212.
The court, in Deem, went on to expound upon the meaning of serious provocation:
 "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." Id. at 211 (citing State v. Mabry (1982), 5 Ohio App.3d 13, paragraph five of the syllabus).
The court below determined that the Appellant failed to demonstrate sufficient evidence of adequate provocation to warrant an instruction on aggravated assault. We disagree.
The analysis into sufficient evidence of adequate provocation requires a two-part inquiry. First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. State v. Mack (1998),82 Ohio St.3d 198, 201. "In determining whether the provocation was reasonably sufficient, the court must consider the emotions and mental state of the defendant and the conditions and circumstances that surround him at the time." Id. at 200. The provocation must be occasioned by the victim and must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." State v. Shane (1992),63 Ohio St.3d 630, 637. Once this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case "actually was under the influence of sudden passion or in a sudden fit of rage." Id at 634.
In light of the aforementioned standard, the determination of adequate provocation is a fact specific analysis. Therefore, we begin by examining the facts of the Ohio Supreme Court's three leading cases on this point:State v. Deem, State v. Shane, and State v. Mack.
In State v. Deem the defendant-appellee and the victim were involved in a romantic relationship for two years. However, the couple broke up and after a brief attempt at reconciliation each filed criminal charges against the other stemming from different confrontations. Then, one day the defendant-appellee waited in his car at a roadside park for the victim to pass by in her car on her way to work. After she drove by, the defendant-appellee followed her in his car, pulled alongside the victim's car and motioned for her to pull over to the side of the road. At some point, the cars bumped and eventually the defendant-appellee forced the victim's car off the road and into a ditch. Appellee stopped his car and then went to the victim's car and attempted to convince her to open her window. When she refused, appellee went back to his car, obtained a hammer, walked back to the victim's car and broke the driver's side window. Witness testimony established that appellee reached through the broken window and stabbed the victim numerous times, causing about thirty wounds. Appellee fled into the woods and turned himself in to the authorities two days later. Defense counsel requested the aggravated assault instruction based on appellee's testimony that appellee was provoked and confused as to why the victim bumped her car into his and that he wanted answers as to who had filed criminal charges against him. The Supreme Court held that there was not sufficient provocation to warrant the instruction on the inferior degree of aggravated assault.
In State v. Shane the court considered a homicide case where a defendant allegedly was provoked to act under the influence of sudden passion or in a sudden fit of rage by his fiancée's words informing him of her sexual infidelity. There, the Ohio Supreme Court held that the fiancé's words alone were not sufficient provocation to use deadly force and held that the mitigating instruction of voluntary manslaughter was not required on these facts.
In State v. Mack the defendant-appellee, went with his girlfriend to pick up her children for visitation at the apartment of her estranged husband, the eventual victim. The parties argued and then at some point the defendant came after the victim with a knife. The victim tried to get back inside his apartment building, but the door would not open so he ran into the street with the defendant-appellee chasing him. Eventually the defendant-appellee caught up with him and stabbed the victim with his knife repeatedly. The defendant-appellee attempted to argue that he was provoked because someone told him on a prior occasion that the victim had threatened him, and that the victim had instigated the current incident by charging him first and threatening his girlfriend. The defendant-appellee admitted that he chased the victim and that the victim fell down on the ground but insisted that when he turned to walk away, the victim grabbed him by his jacket, and that was when he stabbed the victim. Here, the Supreme Court held: "there is no evidence of any serious provocation that would arouse the passions of an ordinary person beyond his or her control. Id at 201-202.
In each of the aforementioned cases there was overwhelming evidence that the defendant brought the conflict to the victim and that the defendant was the aggressor. Furthermore, in the cases discussed above, the victims attempted to get away from the defendant-appellant aggressor prior to their assault but were thwarted by the aggressor.
The case at bar can be distinguished on its facts. Marroquin, the victim, came to the fight. And he did so three times in one evening. He was a willing participant in the fight at the Latin Club which according to all accounts he won. He then, by his own free will, followed Torres back to Jammers in hopes of continuing the fight. When he couldn't get a fight started there he followed Torres to the Speedway gas station. Even if we were to believe that the meeting at Speedway happened by chance, Marroquin still had every opportunity to pull away from the gas station and leave.
Instead, Marroquin encouraged the fight by shouting insults and accusations thereby taunting Torres into action. Marroquin never ran away from Torres but rather ran to him. On the other hand, the record shows that Torres attempted to leave Marroquin behind on several occasions. First, Torres left the scene of the fight at the Latin American Club only to have Marroquin follow him back to Jammers where the former went only to retrieve Priscilla's car. Torres left Marroquin behind for the second when he pulled away from Jammers and proceeded the Speedway gas station. Once again, Marroquin showed up and in response, Torres changed his mind about going in to the store, got back into the car, and drove away from Marroquin for the third time that evening. Nevertheless, Marroquin and his companions followed Priscilla's car across the parking lot. A video tape shows Marroquin hanging his body out of the car gesturing towards Priscilla's car.
Notably, we do not find that by just showing up at the Speedway Marroquin provoked the assault, but rather that a jury might reasonably have found that Marroquin's actions during the course of the entire evening, when considered together, amounted to adequate provocation to Torres at that time. We reach this conclusion keeping in mind that in determining whether provocation was reasonably sufficient we must consider the evidence in the record regarding the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time. Deem at 211. With respect to Torres' state of mind during the few moments before the assault, he testified at trial:
 " I am just hearing what they got to say, and [Marroquin] is taunting me, name calling, wants to finish the fight, things like that. And * * * I am calling him names back, and this time, I am getting real angry, am getting frustrated, and I am thinking to myself, when is he going to let this go. Is he ever going to let this go?"
A further examination of Ohio case law sheds light on how the various districts have applied the holdings in Deem, Shane and Mack. For instance, it will be not sufficient provocation where a victim merely throws a phone book at a defendant. State v. Kent (June 14, 1999), Warren County App. No. CA98-08-094, CA98-10-140, CA98-12-152, unreported. Fear alone is not adequate provocation. State v. Stubblefield (May 31, 2001), Cuyahoga County, App. No. 78361, unreported. Provocative language alone is not sufficient provocation. State v. Moore (May 31, 2001), Cuyahoga County App. No. 78085, unreported. The act of holding a heavy object, such as a hammer or a baseball bat, will not be sufficient provocation.State v. Beranek (Dec. 14, 2000), Cuyahoga County App. No. 76260,unreported; State v. Poe Oct. 6, 2000, Jackson County App. No. 00 CA 09,unreported.
Comparatively, the First District Court of Appeals found sufficient provocation in State v. Napier (1995) 105 Ohio App.3d 713 where the defendant-appellant shot her neighbor with whom she was having a property dispute. In Napier the shooting occurred during an argument and after the victim threw a large metal sign at the defendant-appellant. In that case the court found:
 "Given the emotionally charged atmosphere that preceded the assault and the fact that [the victim] did strike [the appellant] on the arm with the sign, the jury could have reasonably concluded that the mitigating element of serious provocation was established in this case which caused [the appellant] to respond with deadly force."
In State v. Koliser (March 15, 2000), Columbiana County App. No. 97-CO-16, unreported the Seventh District Court of Appeals found sufficient provocation in the following situation:
 Appellant testified that he was facing the mantle in the living room of the apartment and that, "* * * as I turn around [the victim] was in my face saying, `Why did you bite me?' At the same time grabbing me, picking me up like a bear hug. He was picking me up, and bending me backwards, and we went into the stereo. At the same time, he got cut." An attack as Appellant described is sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Moreover, as the trial court stated at sentencing, "* * * to some extent the victim induced, or put himself in a position where this crime happened." Appellant has satisfied the objective portion of the test * * *. (citations omitted)
This court has had limited opportunities to examine the issue of reasonable provocation with respect to the mitigating instruction of aggravated assault. One such opportunity occurred in State v. Gutierrez
(Sept. 21, 1995), Hancock County App. No. 5-95-10, unreported where we determined that the defendant did not present sufficient evidence of provocation to warrant an instruction on aggravated assault. InGutierrez, the only evidence of provocation presented at trial was that victim kicked the appellant in the head as the appellant was punching a non-responsive friend of the victim's and only after the appellant did not respond to the victim's requests to stop the punching.
In State v. Simon (Oct. 21, 1998), Hancock County App. No. 5-98-14,unreported this court affirmed the denial of an instruction on aggravated assault where the defendant-appellant pointed a loaded shotgun at a peace officer who was attempting to execute a valid warrant to remove the defendant-appellant from his ex-wife's home. Not surprisingly, we held that a police officer entering a home with a valid warrant was not sufficient provocation.
In State v. Coldiron (March 31, 1993), Auglaize County App. No. 2-92-20, unreported the appellant tried to establish serious provocation to mitigate the felonious assault charge to aggravated assault with facts that: (1) the victim had punched him in the jaw almost 5 hours earlier; (2) the victim called him a punk and shut the door; (3) that he was fearful of the victim's violent propensities; (4) that both he and the victim were intoxicated; (5) the victim had a bottle in his hand when appellant entered into his dark room; and (6) that the he struck the victim first out of fear that the victim would strike him first. In this case the appellant knocked on door, victim opened then slammed it. Appellant knocked again, victim opened again and this time when the victim opened it the appellant went in swinging. This court held on these facts that there was not sufficient evidence of adequate provocation.
Again, in each of the aforementioned cases the defendant appellant came to or brought about the conflict without the help of the victim. Our decision today therefore is in concert with our prior holdings since there is sufficient evidence in this record for a fact finder to conclude that Marroquin encouraged the assault to occur by goading Torres into fighting him and that it was the defendant-appellant who tried to leave Marroquin behind on three different occasions.
Our inquiry warrants the examination of cases in which trial courts deemed that there was sufficient provocation to warrant an instruction on aggravated assault. In State v. Farely (Aug. 25, 1995), Auglaize County App. No. 2-95-8, unreported the appellant was charged with felonious assault but convicted of aggravated assault. There, the appellant and the victim were involved in two work place disputes over missing equipment. The second confrontation turned violent after the victim and others taunted the appellant by calling him a "cry baby" and "dumb hillbilly." Further insults were exchanged between the parties until the victim pulled the appellant off of his forklift and the two began physically fighting. Eventually the two men were separated momentarily until the victim charged the appellant again. The co-worker broke the men up for a second time. At this time, the appellant retrieved a knife from his forklift and cut the victim on the forearm. In Farley the victim came after the defendant twice before the defendant resorted to deadly force. That was enough for the trial court to allow the instruction on aggravated assault.
The facts of Farley are almost directly in concert with the facts of the current case. Both involve an on going dispute between two willing participants and in both fact patterns the victim is the initial aggressor.
Contributing to our conclusion that Torres presented sufficient evidence of adequate provocation is the fact that Torres did not have a chance to cool off. Generally, past events of the evening will not constitute adequate provocation. Mack at 201 (citing State v. Huertas
(1990), 51 Ohio St.3d 22, 31-32). In State v. McClelland (April 21, 1999), Summit County App No. C.A. 18894, unreported the Ninth District Court of Appeals held that no trier of fact could find adequate provocation where the defendant-appellant, after being beaten by the victim, had sufficient time to clean himself up, go to a telephone, recruit his brother and nephew, and break back into the victim's house before finally attacking the victim.
In the case sub judice, Torres did not have a cooling off period followed by a cool decision to assault Marroquin. Rather, the evidence establishes that the conflict was in continual motion from the start of the fight in the Latin Club to the ultimate assault at Speedway, occasioned by the fact that Marroquin followed Torres each time the latter left the scene of the current confrontation.
Having determined that the defendant-appellant has met the objective standard for establishing sufficient evidence of adequate provocation, our inquiry now shifts to a subjective analysis, to determine whether there was sufficient evidence presented for the jury to reasonably conclude that the defendant "actually was under the influence of sudden passion or in a sudden fit of rage." Shane at 634. Considering the fact that Torres did not come at Marroquin with a broken bottle during the initial encounter at the Latin club, or when Marroquin followed him back to Jammers attempting to reinitiate the fight, we conclude that Torres might reasonably have been found to be under the influence of sudden passion or in a sudden fit of rage. Pricilla's testimony supports this finding. She testified that after the fight at the Latin Club and the meeting at Jammers, Torres agreed that fighting was not a good idea and they should just go home. She further testified that she was "surprised" when Torres "bolted" out of the car suddenly. Torres' sister, Norma, testified that Torres gave no indication that he wanted to continue the fight with Marroquin or wanted to seek revenge. Most compelling is the fact that just prior to the assault and just after Marroquin arrived at the Speedway, Torres retreated back into Priscilla's car rather than fight Marroquin. It was only a few minutes later when Marroquin followed him for the third time that he got out of the car with the beer bottle in hand. Suddenly going after Marroquin with a broken bottle was inconsistent with his previous behavior of the evening, indicating to this court that a jury could have reasonably found that Torres was acting in a sudden fit of rage.
Finally, we must inquire as to whether the trial court abused its discretion by denying Torres' request to instruct the jury on the inferior degree of aggravated assault. We answer this question in the affirmative.
An "`abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157. Upon ruling against the defendant-appellant's request for the instruction on aggravated assault, the trial court stated that provocation does notjustify an assault or the use of a deadly weapon. In making this statement the court not only misapplied the law but failed to consider the proper factors for allowing the instruction. There is nothing in the record to indicate that Torres was seeking to establish a complete justification for the assault. He was attempting to mitigate his punishment by introducing evidence of provocation. The law of Ohio, specifically O.R.C. 2903.12 allows for this mitigating instruction upon a showing of reasonably sufficient provocation.
Therefore, based on the trial court's failure to apply proper standard as handed down by the Ohio Supreme Court, we conclude that the trial court did in fact abuse its discretion when it failed to instruct the jury on the inferior degree of aggravated assault. Accordingly, defendant-appellant's second assignment of error is well taken.
For the reasons stated it is the order of this Court that the judgment of the Court of Court of Common Pleas, Defiance county is REVERSED and the cause is REMANDED to that court for new trial.
Judgment reversed and cause remanded.
SHAW, P.J., concurs.
WALTERS, J., dissenting.