OPINION
{¶ 1} The defendant-appellant, Richard A. Powell ("Powell"), appeals the judgment of the Allen County Common Pleas Court convicting and sentencing him on one count of felonious assault.
 {¶ 2} During the early evening hours of March 24, 2005, Powell arrived at the residence of Janice Bolden ("Bolden") with beer and either cigarettes or crack cocaine. At that time, Powell and Bolden were romantically involved, though not residing together, and Powell had been ordered to have no contact with Bolden due to an unrelated domestic violence conviction.[1]
Throughout the evening, each party consumed at least one 40 ounce bottle of beer, Bolden drank some wine, and they smoked either the cigarettes or crack cocaine together.[2] Eventually, Powell and Bolden began to argue, and Bolden attempted to prevent Powell from leaving in hopes that the police would arrest him in her home and charge him for violating the restraining order. The evidence is undisputed that Powell pushed Bolden aside and left the house. The fight continued outside the house.
 {¶ 3} At approximately the same time, Officer Todd Jennings ("Jennings") of the Lima Police Department was patrolling the 600 block of South Union Street, Lima, Ohio. He observed two people lying near the street and believed them to be fighting. Jennings exited his cruiser, and Powell and Bolden were separated. As a matter of officer safety, Jennings handcuffed Powell and placed him in the back of the police cruiser since Bolden was on the sidewalk and barely moving. Jennings noticed that Bolden was bleeding from her nose and mouth and that she had a knot on her head. When Bolden failed to respond to him, Jennings realized her injuries were more serious than he initially thought and requested an ambulance. Bolden was transported to St. Rita's Hospital, where Officer Eric Mericle ("Mericle"), also of the Lima Police Department, took photographs of her facial injuries.
 {¶ 4} A sergeant with the Lima Police Department also reported to the scene, and the officers determined that Powell was the primary physical aggressor due to their conversations with him, Bolden's injuries, and their prior experiences with Powell and Bolden. On May 12, 2005, the Allen County Grand Jury indicted Powell on one count of felonious assault, a violation of R.C. 2903.11(A)(1), a felony of the second degree, and one count of domestic violence, a violation of R.C. 2919.25(A), a felony of the fifth degree. A jury trial was held on July 19, 2005. The State of Ohio ("State") presented testimony from Jennings, Mericle, Bolden, and Robert Zelenak, M.D. ("Zelenak"). Powell testified on his own behalf and presented the testimony of his probation officer, Louis Acerro. The court admitted into evidence a video tape, several photographs, and the results of three drug tests. The State dismissed the domestic violence charge, and the jury found Powell guilty of felonious assault. The trial court entered judgment finding Powell guilty and sentencing him to a six year prison term to be served consecutively to a one year prison term imposed in an unrelated matter. Powell appeals from the trial court's judgment and asserts the following assignments of error:
The trial court's verdict that Appellant was guilty offelonious assault is against the manifest weight of theevidence.
 The trial court committed prejudicial error when it refused toinstruct the jury on the inferior degree of felonious assault,the offense of aggravated assault. O.R.C. 2903.12.
 {¶ 5} In the first assignment of error, Powell contends that the jury clearly lost its way and based its verdict solely on Bolden's conflicting testimony. The State contends that the evidence supported the elements of felonious assault, and the jury's verdict was not against the manifest weight of the evidence. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541
(quoting Black's Law Dictionary (6th Ed. 1990), 1594) (emphasis in original). In determining whether the trial court's finding is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new hearing ordered. See Statev. Adkins, 3rd Dist. No. 5-97-31, 1999-Ohio-881 (citation omitted). However, determinations concerning the weight of the evidence and credibility of the witnesses are better left to the trier of fact because it is able to observe the witnesses' demeanors and hear the testimony. State v. DeHass (1967),10 Ohio St. 2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 6} The offense of felonious assault requires that the offender knowingly cause serious physical harm to another. See R.C. 2903.11(A)(1); State v. Anthony, 3rd Dist. No. 2-2001-01, 2001 WL 730739, at * 2, reversed on other grounds96 Ohio St.3d 173, 2002-Ohio-4008, 772 N.E.2d 1167. In its case in chief, the State presented testimony from two reporting officers, the victim, and the treating physician. Jennings testified that he observed two people on the ground, and it appeared they were fighting. Trial Tr., Oct. 31, 2005, at 113. As to who was on top, Jennings testified:
[m]y first instinct, I guess, was what I first saw — him on top of her. But then I was questioning myself when he said — when he told me that she was on top of him. I didn't know. So, I went back — we have a — our screens are 2x2 and I went back and checked [the video] on there and on there it appeared to me that she was top of him but after watching the tape Thursday, I don't think you could tell. I honestly couldn't tell.
Id. at 118:4-11. Jennings observed that Bolden failed to respond, was bleeding from the nose and mouth, had a knot on her head, and was foaming at the mouth. Id. at 119. Powell was charged as the primary physical aggressor based on Powell and Bolden's past relationship of violence, conversation with Powell, and observation of Bolden's injuries. Id. at 120. On cross-examination, Jennings testified that he did not see either party strike the other. Id. at 131. Jennings stated that he observed scratches across Powell's chest, but he did not see a bump on Powell's head or forehead. Id. at 129-130.
 {¶ 7} Mericle testified that he observed Bolden's injuries and that he photographed her facial injuries while she was being treated in the emergency room. See id. at 140-143. Bolden testified Powell jumped on her, beat her, and kicked her, and she stated that she tried to fight back. Id. at 153, 166. Bolden testified that they were arguing in the house, Powell head-butted her, she tried to block the door so the police would arrest him for violating the restraining order, Powell pushed her, and then they "started tussling back and forth then took it out to the sidewalk. Then he knocked me down. That's when he started kicking me and beating me and kicking me and beating me." Id. at 165-166.
 {¶ 8} The trial court qualified Zelenak as an expert witness under Evid.R. 702, and he testified that Bolden came to the St. Rita's emergency room on a trauma alert, which is the most serious level for injuries at the hospital. Id. at 175. Zelenak testified that Bolden had slow, erratic breathing and she scored a five or six on the Glasgow Coma Scale,[3] which would indicate a severe injury. Id. at 176-177. Zelenak stated that Bolden had to be intubated because of the difficulty she had with her breathing, and he testified that her injuries included multiple contusions and abrasions on the scalp, face, cheek, and lip; blood filled nostrils; swelling of the right naris, chin, upper lip, and left hand; and three loose teeth. Id. at 178-180. The doctor stated that his final diagnosis was for a closed head injury, concussion, multiple contusions and abrasions to the scalp and face, a nasal fracture, a left orbital fracture, a mild respiratory acidosis, and a possible seizure. Id. at 183. Zelenak opined that the injuries were fresh and consistent with injuries caused by feet or fists, multiple injuries of this nature were not the result of a fall, and Bolden was seriously injured and could have died from the injuries. Id. at 183-185, 192.
 {¶ 9} In the defendant's case in chief, Louis Acerro testified concerning three drug tests he performed on Powell on three different days. Then, Powell took the witness stand in his own defense. Powell testified to a history of domestic violence with Bolden. He testified that he had been arrested ten times for domestic violence, but six were dismissed. Id. at 223. Powell testified that Bolden wanted a "bloop" of cocaine, but he refused to buy it for her. Id. at 234. He stated that Bolden blocked the door so he couldn't leave, so he grabbed his jacket, and pushed her out of the way. Id. at 237. Powell claims Bolden grabbed him outside and pulled him down the street, and when Jennings arrived, Bolden was on top of him. Id. at 237, 242. Powell testified that he did not how Bolden suffered injuries, but speculated that she injured her head and leg trying to push her way into his house the night before, and he stated that her nose was bleeding in the house. Id. at 239-240, 242. Powell testified, "I never touched her. * * * I mean, the only thing — I did push her back when I tried to get out the door." Id. at 244. On cross-examination, Powell denied ever being violent toward Bolden. Id. at 236.
 {¶ 10} Based on these facts, we cannot find that the jury clearly lost its way and created a manifest miscarriage of justice because the greater amount of credible evidence supports the jury's verdict. The only people who actually witnessed the altercation were Powell and Bolden. Their basic stories are essentially the same, but they conflict drastically as to how Bolden sustained her injuries. As between Powell and Bolden, the case amounts to a "he-said, she-said" argument, and the jury, who was in the better position to observe the witnesses' demeanors and hear their testimony, clearly decided Bolden was the more credible witness. The first assignment of error is overruled.
 {¶ 11} In the second assignment of error, Powell contends that the trial court abused its discretion by refusing to instruct the jury on aggravated assault, an offense of an inferior degree. Powell contends that the trial court should have instructed on aggravated assault because "[r]easonable minds could have found that the circumstances described by Appellant constituted serious provocation pursuant to O.R.C. 2903.12." In response, the State argues that the trial court properly refused to the give the instruction on aggravated assault. The State contends that a defendant is not entitled to instructions on lesser included offenses when the evidence presented would provide a complete defense to all substantive elements of the charged crime. The State argues:
[i]f the jury were to believe the Appellant and disbelieve the victim, that he never touched her, it could not also believe he caused her serious physical harm under provocation as required to convict on aggravated assault. In essence, the Appellant wants to be able to deny the charge outright but then be given the benefit of a charge on a lesser included offense.
 {¶ 12} While a trial court has broad discretion in instructing a jury, it must "`fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'"State v. Torres, 3rd Dist. No. 4-01-06, 2002 WL 418392, at * 3 (quoting State v. Comen (1990), 50 Ohio St.3d 206, 210,553 N.E.2d 640). "`Additionally, a trial court may not omit a requested instruction, if such instruction is "a correct and pertinent statements of law, which are appropriate to the facts[.]"'" Id. (quoting State v. Poe, 4th Dist. No. 00 CA 09, 2000-Ohio-1966 (quoting State v. Lessin (1993),67 Ohio St.3d 487, 493, 620 N.E.2d 72)). In deciding whether to include a requested jury instruction, the trial court must determine "whether sufficient evidence has been presented to support the instruction." Id. at * 3 (citing State v. Mitts (1998),81 Ohio St.3d 223, 228, 690 N.E.2d 522). The trial court's decision to include or exclude a requested jury instruction is reviewed for an abuse of discretion, which "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
 {¶ 13} We have previously noted that "[t]he elements of aggravated assault and felonious assault are identical except for aggravated assault's additional mitigating element of serious provocation." Torres, supra at * 3 (citing State v. Mack
(1998), 82 Ohio St.3d 198, 200, 694 N.E.2d 1328). Therefore, a trial court must give a jury instruction for aggravated assault if "the defendant has presented sufficient evidence of serious provocation." Id. (citing R.C. 2903.12(A)(2)). The Ohio Supreme Court has addressed this issue and held:
"[i]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation (such that ajury could both reasonably acquit defendant of felonious assaultand convict defendant of aggravated assault), an instruction on aggravated assault (as a different degree of felonious assault) must be given.
* * *
Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time."
Id. at ** 3-4 (quoting State v. Deem (1988),40 Ohio St.3d 205, 211, 212, 533 N.E.2d 294 (citing State v. Mabry (1982),5 Ohio App.3d 13, 449 N.E.2d 16, paragraph five of the syllabus)) (emphasis added). In determining whether the defendant was adequately provoked, the court must use a two-step test. First, the court must apply an objective standard and "determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage." Id. at *4 (citing Mack, supra at 201). If the evidence satisfies the objective standard, the court must consider "whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage." Id. (quoting State v. Shane (1992),63 Ohio St.3d 630, 634, 590 N.E.2d 272).
 {¶ 14} In this case, we need not review the facts to determine if there was adequate provocation for Powell to react. The defendant bears the burden of producing evidence sufficient to show adequate provocation. In Torres, supra, we found that the appellant was adequately provoked; however, at trial, "Torres admitted to breaking the bottle over [the victim's] head and then using it to stab the man." Id. at * 2. Likewise, in State v.Napier (1st Dist. 1995), 105 Ohio App.3d 713, 664 N.E.2d 1330, the defendant admittedly shot the victim, but presented evidence of adequate provocation. This case is different from Torres andNapier in that Powell has denied any wrong-doing. At the close of the evidence, Powell's trial counsel requested jury instructions for self-defense, aggravated assault, and "misdemeanor assault." Trial Tr., at 252. The trial court refused to give the instructions, stating:
I think the evidence in this particular instance goes to show that — at least the evidence considered most strongly in favor of the defendant — his own testimony is that he didn't do anything to her; that she didn't do anything to him; and that he doesn't know how she got the injuries she does — she has on herself except for it probably happened the day before. He has no idea and therefore I think it's pretty clear that there's no evidence before the court of the jury dealing with the self-defense or the lesser included of agg assault or assault.
Trial Tr., at 253:3-13. Powell admits that he pushed Bolden so he could get out of the house,[4] but he consistently denies harming her in any manner. See Id., at 218-251. If the jury were to believe Powell that he did nothing wrong and never harmed Bolden, it would be impossible to convict him of aggravated assault. On these facts, we cannot find the trial court abused its discretion by refusing to instruct the jury on the offense of aggravated assault. The second assignment of error is overruled.
 {¶ 15} Although the trial court's judgment is affirmed as to any error at trial, the trial court ordered Powell to serve his sentence consecutive to a sentence imposed in a different matter. We have previously held when a trial court imposes a sentence consecutive to a previous sentence, it must follow the procedure set forth in R.C. 2929.14(E)(4). State v. Reiher, 3rd Dist. No. 2-05-09, 2005-Ohio-4747. Recently, the Ohio Supreme Court has found R.C. 2929.14(E)(4) unconstitutional. State v. Foster,
___ Ohio St.3d ___, 2006-Ohio-856, at paragraph 3 of the syllabus. Because the statute under which Powell was sentenced is unconstitutional and because his direct appeal was pending at the time Foster was released, we must vacate the sentence and remand this matter to the trial court for a new sentencing hearing. Id. at ¶¶ 103-104.
 {¶ 16} The judgment of the Allen County Common Pleas Court is affirmed in part; however, the trial court's sentence is vacated. This matter is remanded for a new sentencing hearing.
Judgment affirmed in part, Sentence vacated and remanded.
 Cupp, J., concurs.
[1] State v. Powell, Allen County Common Pleas case number CR 2004 0557.
[2] We note that drug tests were performed on both Powell and Bolden, which revealed both to be under the influence of cocaine. Powell was tested by his probation officer, and Bolden was tested at St. Rita's Hospital during the course of treatment.
[3] The Glasgow Coma Scale ranks injuries on a scale of 3-15. The doctor testified that the prosecuting attorney would score a 15 by standing in court and talking. Trial Tr., at 177.
[4] Neither Powell nor Bolden testified that Bolden was injured by Powell pushing her away from the entry door.